970 So.2d 379 (2007)
LIFESOUTH COMMUNITY BLOOD CENTERS, INC., Appellant,
v.
Kaynan FITCHNER, as Personal Representative of the Estate of Chase Fitchner, deceased, Appellees.
Kaynan Fitchner, as Personal Representative of the Estate of Chase Fitchner, deceased, Appellant,
v.
Lifesouth Community Blood Centers, Inc., a Florida corporation, Appellee.
Nos. 1D06-4475, 1D06-4597.
District Court of Appeal of Florida, First District.
October 30, 2007.
Order Denying Clarification and Granting Certification December 26, 2007.
*380 Christine R. Davis of Carlton Fields, P.A., Tallahassee, and Robert E. Biasotti of Carlton Fields, P.A., St. Petersburg, for Appellant in Case No. 06-4475/Appellee in Case No. 06-4597.
Thomas J. Guilday, Catherine B. Chapman, and J. Celeste Burns of Guilday, Tucker, Schwartz & Simpson, P.A., Tallahassee, for Florida Association of Blood Bank, Amicus Curiae for Appellant in Case No. 06-4475.
Raymond T. Elligett, Jr. and Amy S. Farrior of Buell & Elligett, P.A., Tampa, and Dean R. LeBoeuf and Rhonda S. Bennett of Brooks, LeBoeuf, Bennett, Foster & Gwartney, P.A., Tallahassee, for Appellees in Case No. 06-4475/Appellants in Case No. 06-4597.
WOLF, J.
In Case No. 1D06-4475, appellant, LifeSouth Community Blood Centers, Inc. (LifeSouth), raises several issues on appeal from a final judgment in favor of appellee, Kaynan Fitchner. We will address one which we find to be dispositive: Whether the trial court erred in denying appellant's motion to dismiss for appellee's failure to comply with the presuit notice requirements of section 766.106(2), Florida Statutes. We agree with LifeSouth on this point and reverse.
In Case No. 1D06-4597, appellant, Kaynan Fitchner, as Personal Representative of the Estate of Chase Fitchner, deceased, challenges the trial court's denial of the estate's motion for attorney's fees based on a settlement proposal.
We consolidate Case Nos. 1D06-4475 and 1D06-4597 for purposes of this opinion. In light of our disposition in Case No. 06-4475, we affirm the trial court's decision in Case No. 06-4597 without further comment.
On April 23, 2004, plaintiffs, Ross Fitchner and Kaynan Fitchner, individually and as parents and legal guardians of Chase Fitchner, filed a complaint against the defendant, LifeSouth Community Blood Centers, Inc. The complaint alleged that on or about August 15, 2002, Chase, age seven, was admitted into Shands Hospital for treatment related to Faconi's anemia. While at Shands, Chase received numerous transfusions from blood which was collected and disseminated by LifeSouth. Chase was discharged from Shands on October 7, 2002, but was readmitted on October 8, 2002, because he had been contaminated with West Nile Virus (WNV). Chase was discharged from Shands on February 14, 2003, and later died due to complications associated with WNV. The Center for Disease Control (CDC) conducted an investigation and determined that Chase was infected with WNV during one of his transfusions while at Shands.
*381 The appellee filed an action for damages asserting that LifeSouth was negligent in the method by which they screened a donor whose blood contained WNV. Specifically, appellee asserted that the donor was not sufficiently familiar with English and that the LifeSouth screeners could not properly conduct the pre-screening process without an interpreter.
LifeSouth filed several motions to dismiss asserting that the appellee had not complied with the presuit notice requirements of chapter 766, Florida Statutes. The trial court denied these motions finding, while blood banks are health care providers, the appellee's complaint was not one for medical malpractice.
The issue before us is one involving statutory interpretation. That issue is whether the Legislature intended that an action based on the alleged negligent screening of blood donors by a blood bank be subject to the presuit notice requirements of section 766.106(2), Florida Statutes (2003). Our review of the trial court's decision is de novo. Dep't of Children & Families v. P.S., 932 So.2d 1195, 1197 (Fla. 1st DCA 2006).
Section 766.106(2), Florida Statutes, provides that, prior to filing a suit for medical negligence, a claimant shall notify each prospective defendant. Failure to follow these procedures will result in dismissal. See Goldfarb v. Urciuoli, 858 So.2d 397, 399 (Fla. 1st DCA 2003) (stating "if the required presuit notice is not given to a health care provider, the complaint is properly dismissed"). Appellee relies on Silva v. Southwest Florida Blood Bank, Inc., 601 So.2d 1184 (Fla.1992), for the proposition that no such notice was required in this case. In Silva, the supreme court determined that blood banks are not subject to the two-year statute of limitations for medical malpractice under section 95.11(4)(b), Florida Statutes (1991). The supreme court analyzed section 95.11(4)(b) by inquiring whether: 1) the action before the court arose out of a medical diagnosis, treatment, or care; and 2) whether the diagnosis, treatment, or care was rendered by a "provider of health care." Silva, 601 So.2d at 1186. In its analysis, the supreme court decided that the words "diagnosis," "treatment," and "care" were unambiguous and, because the blood bank did not deal with patients, it was merely "the supplier of a product." Id. at 1187. The supreme court referred to section 672.316(5), Florida Statutes (1981), acknowledging that the Legislature, in one context, declared the sale of blood to be a service; however, it further posited: "There is no evidence to suggest that the legislature intended this legal fiction (that selling blood is a "service" rather than a "sale") to apply in any other context." Id. at 1188. However, the court noted that, even if blood banks provided a service, the service could not be read to mean a diagnosis, treatment, or care, as required by the 1991 statute of limitations. Id. Additionally, the supreme court determined that it could find "no indication that the legislature intended for blood banks to be considered `providers of health care' for purposes of the medical malpractice statute of limitations." Id. at 1189. Accordingly, the supreme court held that a blood bank was not a provider of health care that rendered diagnosis, treatment, or care. Id.
Relying on Silva, the Fourth District in Community Blood Centers of South Florida, Inc. v. Damiano, 697 So.2d 948 (Fla. 4th DCA 1997), determined that the presuit notice requirements did not apply to blood banks. We determine neither Silva nor Damiano control the outcome of the instant case. First, the Silva holding was limited to whether blood banks were subject to the two-year statute of limitations *382 for medical malpractice suits in 1991. Id. Second, since Silva and Damiano were decided, the Legislature has made crucial changes to the medical malpractice statute, in particular, broadening its application to blood banks. See Ch.2003-416, Laws of Fla.
In 2003, the Legislature amended section 766.202, Florida Statutes, to define "health care provider" to specifically include blood banks. Ch.2003-416, § 57, Laws of Fla. Thus, the issue of whether a blood bank is a health care provider, which concerned the supreme court in Silva, has been put to rest. The second issue is whether the screening of blood constitutes medical negligence pursuant to chapter 766. To determine this question, we need not only look at the definition of health care provider, but the purpose of chapter 2003-416, as well as other amendments contained within this legislation.
The Legislature changed the scope of chapter 766 from "medical malpractice" to "medical negligence," most notably in the amendments to subsections 766.106(1) and (2), Florida Statutes.
766.106. Notice before filing action for medical negligence malpractice; presuit screening period; offers for admission of liability and for arbitration; informal discovery; review
(1) Definitions.  As used in this section, the term:
(a) "Claim for medical negligence malpractice" or "claim for medical malpractice" means a claim, arising out of the rendering of, or the failure to render, medical care or services.
(b) "Self-insurer" means any self-insurer authorized under s. 627.357 or any uninsured prospective defendant.
(c) "Insurer" includes the Joint Underwriting Association.
(2) Presuit notice. 
(a) After completion of presuit investigation pursuant to s. 766.203(2) s. 766.203 and prior to filing a complaint claim for medical negligence malpractice, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence malpractice. Notice to each prospective defendant must include, if available, a list of all known health care providers seen by the claimant for the injuries complained of subsequent to the alleged act of negligence, all known health care providers during the 2-year period prior to the alleged act of negligence who treated or evaluated the claimant, and copies of all of the medical records relied upon by the expert in signing the affidavit. The requirement of providing the list of known health care providers may not serve as grounds for imposing sanctions for failure to provide presuit discovery.
Ch. 2003-416, § 49, Laws of Fla.
It appears that the purpose of the change was to remove the focus of the chapter from traditional medical malpractice to all situations of medical negligence involving diagnosis, treatment, and care. In addition, in section 766.102(1), Florida Statutes (2003), entitled "Medical negligence; standards of recovery; expert witness," the Legislature added a specific reference to section 766.202(4) which, as previously stated, now includes blood banks. Section 766.102(1), Florida Statutes, now provides:
In any action for recovery of damages based on the death . . . of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in s. 766.202(4), the claimant shall have the *383 burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. . . .
(Emphasis added). Additionally, as previously stated, section 766.202(4), Florida Statutes (2003), provides:
"Health care provider" means . . . a blood bank; a plasma center, . . . or other association for professional activity by health care providers.
While appellee recognizes that the 2003 amendments to chapter 766, Florida Statutes, were intended to provide some level of protection from medical negligence claims to blood banks, she argues that these changes only apply to claims by the donor arising from the taking of the blood. We reject this view for several reasons.
First, the stated purpose of chapter 2003-416 is to deal with the malpractice crisis and making quality health care available to citizens of the State of Florida. The greatest liability exposure of blood banks is not in the relatively simple process of taking blood, but in the donor screening process, where critical decisions are made about providing blood to sick patients. Thus, the narrow scope proposed by appellee appears to be inconsistent with the stated legislative purpose.
Second, by including blood banks in the definition of "health care provider," the Legislature implied a relationship between blood banks and persons needing or receiving health care. A donor is not seeking health care but only donating blood; the party receiving the blood is the one seeking health care. Thus, the argument that the 2003 amendments would only apply to the blood bank-donor relationship is in conflict with the amended definition of "health care provider."
While not all claims against health care providers constitute medical negligence, those arising from the receipt of medical care or services qualify as medical negligence claims. See, e.g., Puentes v. Tenet Hialeah Healthsystem, 843 So.2d 356 (Fla. 3d DCA 2003) (holding that a patient's negligence claim against a hospital, arising out of a hospital dietician's failure to provide patient with hypoallergenic diet as ordered by physician, was a medical malpractice action requiring compliance with statutory presuit notice requirements).
The screening of blood to be provided to a patient is part of medical services to that patient. Federal regulations mandate that blood be collected under the supervision of a physician, and virtually every step of the blood collection process requires the exercise of medical expertise by medical professionals. See, e.g., 21 C.F.R. § 640.4. Physicians, or persons acting under the supervision of physicians, determine whether prospective donors should donate blood by taking detailed medical histories and administering a brief physical examination. See 21 C.F.R. § 640.3(a)-(b). The process of screening blood donors and testing blood requires that blood banks, such as LifeSouth, identify each unit's blood type and specific characteristics to ensure its match to the specific traits and characteristics of the patient receiving the blood. These services are intimately tied to the care and treatment provided to the blood recipient.
That blood banks provide medical services is a position supported by case law throughout the country. For example, in Bradway v. American National Red Cross, 263 Ga. 19, 426 S.E.2d 849 (1993), the Georgia Supreme Court answered the following certified question from the Eleventh Circuit Court of Appeals in the affirmative:

*384 Is a suit alleging that a not-for-profit blood bank was negligent in collecting and supplying human blood-including screening volunteer blood donors and testing blood for the presence of human immunodeficiency virus (HIV)-an action for medical malpractice . . . ?
Considering the certified question, the Georgia Supreme Court opined that it was "convinced that the steps involved in the collection, processing and distribution of blood . . . constitute[s] a professional medical service." Id. at 850. According to the court, "[t]he procedures for the collection of blood, including donor screening and blood testing, [were] the product of professional medical expertise." Id. at 851 (emphasis added). Particularly, the court noted that "[a] crucial part of the screening procedure developed by the physicians is the medical history interview." Id. (emphasis added). The court explained, "[I]n this interview, prospective donors are asked questions designed to elicit information necessary for an effective evaluation of the donor; the formulation of these questions requires substantial medical knowledge and judgment." Id. at 850-51. The court concluded that "by their very nature, the services provided by the Red Cross are medical services involving medical judgment."[1]Id. at 851.
Courts in other jurisdictions have held similarly. See also Miller v. Am. Nat'l Red Cross, 2006 WL 473750 (N.D.W.Va. Feb.28, 2006) (holding that plaintiff alleged a medical negligence claim arising from the alleged improper screening policies and handling of blood); Smith v. Paslode Corp., 799 F.Supp. 960 (E.D.Mo.1992), rev'd on other grounds, 7 F.3d 116 (8th Cir.1993) ("[T]he uncontradicted evidence in the present case shows that nearly every step in the ARC's collection, processing and distribution of blood requires medical expertise."); Wilson v. Am. Red Cross, 600 So.2d 216 (Ala.1992) (opining that the Red Cross is directly involved in the delivery of health care services since its activities are highly technical and require supervision and participation by a physician and other trained technical personnel); Tufaro v. Methodist Hosp., Inc., 368 So.2d 1219 (La.Ct.App.1979) (opining that because a blood transfusion is a medical procedure, "the standard of care that must be utilized in collecting and transfusing blood is logically the same as that which applies to the actions of physicians and surgeons."); Doe v. Am. Red Cross Blood Servs., S.C. Region. 297 S.C. 430, 377 S.E.2d 323, 326 (1989) ("Since the transfusion of blood is characterized as a skilled medical service, then we hold that the Red Cross, as a blood collector and processor, should be treated as a professional.") (emphasis supplied).
We, therefore, determine the trial court erred in failing to grant appellant's motion to dismiss for failure of the appellee to comply with the presuit notice requirements contained in section 766.106(2), Florida Statutes.
We, therefore, REVERSE and REMAND for the trial court to enter an order granting appellant's motion to dismiss.
BROWNING, C.J., and POLSTON, J., concur.

*385 ON MOTION FOR CERTIFICATION AND CLARIFICATION

WOLF, J.
We deny the motion for clarification, but we grant the motion for certification and reword the certification question proposed by appellee.
We hereby certify the following question as being one of great public importance:
DO THE PRESUIT NOTICE REQUIREMENTS OF SECTION 766.106(2), FLORIDA STATUTES, APPLY TO A BLOOD BANK THAT IS SUPPLYING BLOOD TO A PATIENT?
BROWNING, C.J. and POLSTON, J., concur.
NOTES
[1] The court opined that its position was supported by the Code of Georgia. Under OCGA § 31-22-1(2), the term "clinical laboratory" included a blood bank. Clinical laboratories are, according to OCGA § 31-22-9.1(a)(8), health care facilities. Similarly, in this case, blood banks are required to be licensed as clinical laboratories in Florida under chapter 483. Clinical laboratories licensed under chapter 483 are health care providers as defined in section 766.202(4).