985 So.2d 1123 (2008)
AC HOLDINGS 2006, INC., Appellant/Cross-Appellee,
v.
John B. McCARTY and Patricia McCarty, Appellees/Cross-Appellants.
No. 3D07-769.
District Court of Appeal of Florida, Third District.
May 28, 2008.
Rehearing Denied July 23, 2008.
Murai, Wald Biondo, Moreno & Brochin, Coral Gables and Allen P. Pegg, for appellant.
Wampler Buchanan Walker Chabrow Banciella & Stanley, Miami, for appellees.
Before RAMIREZ, SHEPHERD, and CORTIÑAS, JJ.
RAMIREZ, J.
This is an appeal and a cross-appeal from a final summary judgment of foreclosure of a $2 million mortgage. Because *1124 we conclude that there were genuine issues of material fact, we reverse.
The plaintiffs/appellees/cross-appellants, John B. McCarty and Patricia McCarty, his wife, sold their home, a waterfront property on San Marcos Island, Venetian Causeway, to AC Holdings 2006, Inc., the Appellant/Cross-Appellee, for a purchase price of $4.1 million At closing, they received $2.1 million and took back a $2 million mortgage secured by an interest-free purchase money note, maturing on December 18, 2006. It is undisputed that AC Holdings paid the $2 million by the December 18 deadline.
The foreclosure was based on the mortgage requirement that AC Holdings deliver to the McCartys an insurance policy for $2 million worth of hazard insurance.[1] The closing was moved up two weeks at the request of the McCartys, who were leaving for Europe and wanted to close before their departure. At closing, the mortgage gave AC Holdings fourteen calendar days, to June 2, 2006, to obtain the insurance.[2] If the insurance coverage was not procured within that time, interest would be due on the promissory note.
AC Holdings obtained insurance in the amount of $1,122,500, which represented the replacement value of the residence, but was unable to increase the coverage to $2 million by June 2, 2006. On June 6, counsel for the McCartys wrote to counsel for AC Holdings that the McCartys would forego filing a foreclosure action if AC Holding obtained suitable insurance coverage by June 13. The letter did not mention any default interest. Before the June 13 deadline, AC Holdings increased the coverage to $2 million. Unwilling to accept yes for an answer, the McCartys filed a foreclosure action on June 16.
In their amended complaint, the McCartys claimed that AC Holdings was obligated to obtain the required insurance by June 2, 2006, but failed to mention that: (1) AC Holdings had already obtained insurance in the amount of $1,122,500; (2) they had granted an extension in their June 6 letter until June 13; or (3) the amount of coverage had been increased to $2 million within the June 13 deadline. Even though the effective date on the policy was June 7, the McCartys apparently were unsatisfied because the premium for the $2 million policy was not paid until June 23, 2006.
The McCartys moved for summary judgment. Prior to the hearing on the motion, AC Holdings did not submit any affidavits or other documents in opposition to the motion for summary judgment. It is undisputed that former counsel for AC Holdings had been admitted to the Florida Bar less than one month prior to the filing of the foreclosure action. It is also clear *1125 that former counsel's conduct was totally inadequate. The trial court granted the McCartys' motion for summary judgment, finding that the purchase money note and mortgage were in default and that interest had accrued on the purchase money note and mortgage from the date of the original closing (i.e., May 19, 2006) at the daily rate of $1369.86. An evidentiary hearing was scheduled on the McCartys' motion for attorneys' fees.
AC Holdings moved for a rehearing. Instead of filing any affidavits, counsel stated that the "[d]efendant shall proffer to the court material evidence regarding factual matters and discrepancies of extensions to comply with insurance requirements and defendant concessions to close at a time prior to the stipulated contractual date...." Counsel attached a copy of the June 6 letter. Two days later, the trial court denied the motion.
New counsel thereafter filed a notice of appearance on behalf of AC Holdings together with a second motion for rehearing and/or reconsideration of the order granting the McCartys' motion for summary judgment, with an affidavit of Angel Torres. This motion also was denied. Ultimately, on February 28, 2007, the trial court entered a final judgment of foreclosure, which is the subject of the instant appeal. The court awarded the McCartys $366,459.04, which included the sum of $293,150.04 as interest from May 19, 2006, to December 18, 2006, and attorneys' fees of $72,787.50. It also awarded interest from the date of judgment at twenty-five percent. Additionally, the court found that the mortgage provided for interest to continue to accrue at the rate of twenty-five percent on the $2 million, even though that sum already had been paid and a final judgment had been entered, but it stated that "the Court in exercising its equitable jurisdiction and powers has determined that this provision will become effective on March 5, 2007, at 12:00 PM." Otherwise, AC Holdings would be liable for interest on the $2 million at twenty-five percent or $1369.86 per day.[3] Not satisfied with their pound of flesh, the McCartys have cross-appealed, assigning error to the failure to award interest from December 19, 2006 to March 5, 2007.
We first reject the argument that the trial court could not consider defendant's motion for rehearing because a prior motion for rehearing had been denied. An order granting summary judgment is an interlocutory order, and a trial court has inherent authority to reconsider and modify its interlocutory orders. Bay N Gulf, Inc. v. Anchor Seafood, Inc., 971 So.2d 842, 843 (Fla. 3d DCA 2007); Bettez v. City of Miami, 510 So.2d 1242, 1243 (Fla. 3d DCA 1987).
Next, we consider whether the trial court abused its discretion in refusing to consider the Torres affidavit. There is case law to support the argument that a trial court does not abuse its discretion in refusing to consider a late affidavit. See Coffman Realty, Inc. v. Tosohatchee Game Pres., Inc., 381 So.2d 1164 (Fla. 5th DCA 1980) (holding that it is not an abuse of discretion for a trial judge to refuse to admit affidavits filed with a motion to rehear the granting of a summary judgment). The Fifth District Court of Appeal's Coffman Realty case involved a claim for real estate brokerage commissions on a sale of land to the State of *1126 Florida. 381 So.2d at 1165. The brokers claimed that they were the procuring cause of the sale while the sellers successfully resisted that claim. Id. The opinion stated that, even on appeal, appellants had not cited to any part of the record for the existence of factual issues, with the exception of an excerpt from the deposition of one state official. The court further concluded that the excerpt did not raise genuine material factual issues. Id.
Here, the McCartys argue that AC Holdings failed to establish that there were compelling or exigent circumstances that excused the tardiness of Torres' affidavit. We do not know if the trial court considered the affidavit, but we believe that compelling or exigent circumstances existed. At the first hearing on the motion for summary judgment, counsel for the McCartys did not dispute that AC Holdings had placed insurance coverage on the property with an effective date of June 7, 2006. Thus, a genuine issue of material fact was present, even at this hearing, to wit: whether there was a breach and whether the breach was material so as to warrant the equitable remedy of foreclosure. In Coffman Realty, the summary judgment effectively ended the litigation. In our case, the trial court merely granted summary judgment, leaving for a later day the computation of damages, costs and attorneys' fees. Thus, we conclude that under the facts of this case, the trial court abused its discretion in rejecting an affidavit that merely explicated the issues that previously had been raised. See McGowan v. Miami-Dade County, 724 So.2d 683, 684 (Fla. 3d DCA 1999) (reversing summary judgment where the record, including the affidavits submitted on rehearing, established the existence of a material factual issue).
In two cases out of the Second District, the Court of Appeal reversed summary judgments after the trial court rejected affidavits submitted on rehearing. See Fatherly v. Ca. Fed. Bank, FSB, 703 So.2d 1101 (Fla. 2d DCA 1997) (a mortgage foreclosure case); Fernandes v. Boisvert, 659 So.2d 412 (Fla. 2d DCA 1995). In Fernandes, counsel's incompetence was evident. The court observed that "something has gone awry." Fernandes, 659 So.2d at 413. Although recognizing the trial court's broad discretion, the appellate court found that the trial court had abused its discretion in "refusing to rescue Fernandes from the apparent incompetence of her lawyer." Id.
We also disagree with the McCartys that the Torres affidavit does not create a genuine issue of material fact that would preclude the court from granting the plaintiffs' motion for summary judgment. Even if the insurance was not paid for until June 23, 2006, the effective date of the policy was June 7. The default, if any, was cured. Under no set of circumstances was the trial court justified in assessing interest at the default rate after the McCartys admittedly were delivered the $2 million policy. Incredibly, the McCartys are seeking interest on $2 million from December 19, 2006, until March 5, 2007, even though they were paid the $2 million on December 18, 2006. Instead of explaining why they are entitled to this money, they argue that the trial court could not refuse to award it "in the interest of justice."
In sum, because there were genuine issues of material fact, we reverse the final summary judgment and remand for proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] The mortgage terms were:

That the Mortgagor will keep the Property and all other real and personal property now and hereafter encumbered by this Mortgage fully insured as may be required from time to time by the Mortgagee against loss by fire, windstorm and other hazards, casualties and contingencies for such periods and for not less than Two Million ($2,000,000) Dollars.
[2] The terms were:

If the required insurance is not delivered to the Mortgagee by the Mortgagor at closing, the Mortgagor will have fourteen (14) days from the date of closing (i.e., June 2, 2006) to get the insurance in place and to deliver a binder for the full amount required by this Mortgage. If said coverage is not totally in place and delivered within said fourteen (14) calendar days' period then this Mortgage shall be in default and the interest on the Purchase Money Note will accrue at the default rate set forth in said Purchase Money Note from the date of making of this Mortgage until the insurance coverage is complete and delivered to the Mortgagee.
[3] The McCartys admit that AC Holdings paid the full amount of the judgment, together with six days interest on the judgment. In addition, AC Holdings paid an additional two days' interest on the $2 million because the payment was not made by the March 5 deadline established by the trial court.