PADOVANO, J.
This is a wrongful death case. The jury returned a verdict in favor of the plaintiff, but this court reversed the judgment entered on the verdict in a previous appeal by the defendant. The proceeding on remand was concluded in the trial court by an order dismissing the plaintiffs complaint. The basis for the dismissal was that the plaintiff had failed to serve notice of the suit under the medical malpractice statute. The case is now back before the court on the plaintiffs appeal.
The question in this appeal is whether a statutory amendment including blood banks within the class of health care providers that are protected by the presuit screening requirements can be applied retroactively. We hold that it cannot. The amendment alters the substantive rights of the parties in that it adds a condition that can operate to bar a cause of action entirely. Because the amendment was not lawfully applicable in this case, we reverse the order dismissing the complaint and remand the case for a trial on the merits of the plaintiffs claim of negligence.
On September 22, 2002, while a patient at the Shands Hospital in Gainesville, then seven-year-old Chase Fitchner received blood provided to the hospital by Life-South Community Blood Centers. Chase became sick and several weeks later he was diagnosed as having West Nile Virus Encephalitis. The Centers for Disease Control investigated the matter with Life-South’s cooperation and, as a result of the investigation, the infection was traced to the blood the hospital had acquired from LifeSouth.
Chase’s parents, Ross and Kaynan Fitchner, retained a lawyer. On March 2, 2004, the lawyer sent a certified letter informing LifeSouth that he was representing the Fitchners in connection with the injury Chase had sustained when he contracted the virus from the blood Life-South had provided. In this letter, the lawyer requested copies of LifeSouth’s policies and procedures for screening blood donors, documents supplied to the Centers for Disease Control in the investigation, and documents relating to the infected donor.
LifeSouth provided written acknowledgment of receipt of the letter and furnished copies of its investigation report and its procedures for screening blood donors. However, LifeSouth did not reveal critical information about its donor, whose identity is confidential by law, or about its screening of that donor. LifeSouth did not disclose that the donor did not understand English or that the LifeSouth screener did not speak the donor’s language.
The Fitchners filed suit against Life-South on April 23, 2004. They sought damages for the injuries Chase had sustained as a result of LifeSouth’s negligence in failing to ensure the safety of the blood he had received. LifeSouth moved to dismiss the complaint on the ground that the Fitchners had not sent a presuit notice of intent to initiate litigation for medical negligence. In support of its motion, Life-South relied on the 2003 amendment to section 766.202(4) Florida Statutes, which added blood banks to the class of potential defendants who are entitled to the procedural safeguards afforded by the statute.
The Fitchners opposed the motion to dismiss. They argued that LifeSouth had *273 merely provided blood to the hospital and that the act of supplying the blood was not the equivalent of medical care or treatment. Thus, according to the Fitchners, the medical malpractice statute did not apply, and the failure to comply with statutory presuit notice requirements in the statute was not a proper basis for dismissal.
The trial court agreed with the Fitch-ners. The court ruled that LifeSouth is a health care provider, as defined in section 766.202(4), but it denied LifeSouth’s motion to dismiss the complaint, concluding that a blood recipient’s claim against a blood bank was not considered a claim for medical malpractice under section 766.102(1) Florida Statutes (2008).
Chase died on July 8, 2004, and his mother, Kaynan, was appointed as the personal representative of his estate. The complaint was amended to reflect that Kaynan was serving as the plaintiff in her representative capacity and to assert a cause of action for wrongful death. The allegations of negligence were the same as those in the original complaint.
The case was tried before a jury in June 2006, and the jury found LifeSouth liable to the estate for its negligence in failing to properly screen the blood. After hearing post-trial motions, the trial court entered a final judgment on the verdict in the amount of $8,029,425.00. LifeSouth then filed the first appeal to this court.
The issue presented in the appeal was whether a blood bank was a health care provider and, if so, whether the act of supplying blood constituted a medical service under the statute as amended in 2008. The court answered these questions in the affirmative and therefore concluded that the trial judge had erred in denying Life-South’s motion to dismiss the complaint for noncompliance with presuit notice requirements. See LifeSouth Community Blood Centers, Inc. v. Fitchner, 970 So.2d 379, 381-84 (Fla. 1st DCA 2007). The court reversed the judgment for the Fitchners and remanded the case with instructions to grant the motion to dismiss. However, the opinion did not expressly direct the trial court to dismiss the action with prejudice or to enter judgment for LifeSouth. See LifeSouth, 970 So.2d at 384.
The Fitchners moved for clarification as to whether this court’s decision intended the dismissal to be with or without prejudice and for certification of a question of great public importance to the Florida Supreme Court. The motion for clarification was denied, but the court certified the question it had decided in the appeal as a question of great public importance. See LifeSouth at 385. The Florida Supreme Court initially accepted jurisdiction but later declined to hear the case. Fitchner v. Lifesouth Community Blood Centers, Inc., 1 So.3d 172 (Fla.2009).
A dispute arose in the trial court regarding the permissible scope of the proceeding on remand. The closing line of the opinion in the prior appeal states that the order was reversed and that the case was remanded “for the trial court to enter an order granting appellant’s motion to dismiss.” LifeSouth, 970 So.2d at 384. Life-South contended that this direction left nothing for the trial court to do but enter a judgment in its favor. In contrast, the Fitchners maintained that the effect of the reversal was to return the case to the posture it would have assumed had the trial court properly granted the motion to dismiss the complaint. They argued that if the complaint had been dismissed, they would have been afforded an opportunity to amend and that the situation was not different merely because the appellate court ordered the dismissal.
*274 The trial court correctly interpreted the mandate to allow further proceedings on the Fitchners’ claim. The Fitchners then attempted to serve a notice that would comply with the statutory requirements, but LifeSouth argued that the notice was untimely. Additionally, the Fitchners argued in the alternative that the notice should be excused, because the confidentiality rules in place at LifeSouth prevented them from obtaining the necessary information about the donor, and that the original letter their lawyer sent to Life-South on March 2, 2004, contains enough information to qualify as a notice of suit under the medical malpractice statute.
These arguments were resolved against the Fitchners. The trial court acknowledged that it would have been difficult or impossible for the Fitchners to discover the facts on which liability was based, given the confidentiality of blood donor records. The court recognized the equitable argument they had raised on this point but concluded, nonetheless, that it could find no authority to excuse the presuit notice requirements on a finding of impossibility of performance of a reasonable presuit investigation. Accordingly, the trial court dismissed the complaint with prejudice.
The Fitchners, who had by then obtained new counsel, moved for rehearing. Among other points made in the motion for rehearing, they argued that the 2003 amendment to the medical malpractice statute could not be applied to a cause of action accruing before the effective date of the statute. Because the cause of action in this case arose in the fall of 2002, they argued, the action could proceed as an ordinary negligence claim without the need for a notice under the medical malpractice statute. LifeSouth opposed the motion. The trial court held a hearing and considered oral arguments on the points raised in the motion for rehearing and response. Following the hearing, the court entered an order denying the motion. In the order, the judge stated that the only issue meriting consideration was whether the presuit notice requirement of the medical malpractice statute is unconstitutional as applied to the Fitchners. However, the court explained that this was not a proper basis for rehearing because it had not been raised before, and it was not a matter that the court had “overlooked or misapprehended.” The plaintiff then filed a timely appeal from the final order dismissing the complaint. Several issues have been raised and argued in the appeal, but only one merits consideration: whether the 2003 amendment to the medical malpractice statute can be applied retroactively. If the statute applies to the Fitchners’ cause of action, they were required to give a timely presuit notice of the action, and the trial court was correct in dismissing their complaint for failure to comply with the notice requirement. On the other hand, if the statute cannot be applied retroactively, the order dismissing the complaint must be reversed, and the case may proceed to trial as an ordinary negligence case.
LifeSouth contends that the dispute over the application of the statute is not properly before the court, and it advances several arguments in support of this contention. One of these arguments is that the potential application of the statute was resolved by the previous decision of the court and that it is now barred by the doctrine of the law of the case. Another is that the Fitch-ners had no right to raise the issue in the trial court, because it is improper to allow an amendment to a complaint on remand from a decision of an appellate court. The final argument is that the trial court correctly declined to consider the merits of the issue, because it was raised for the first time in a motion for rehearing. These arguments do not persuade us that *275 it is no longer appropriate to decide whether the statute can be applied retroactively.
The doctrine of the law of the case requires that questions of law decided in an appeal must govern the case through all subsequent stages of the proceeding. See Greene v. Massey, 384 So.2d 24, 28 (Fla.1980). When an appellate court decides a point of law, that point is no longer open for debate on remand to the trial court and, with limited exceptions, it is no longer open for debate in a subsequent appeal. See Strazzulla v. Hendrick, 177 So.2d 1, 3 (Fla.1965). It follows from these general statements of the rule that the doctrine of the law of the case can be applied only to a point of law that was actually decided on appeal. It does not bar consideration of a point merely because it could have been presented and decided.
As the supreme court stated in U.S. Concrete Pipe Co. v. Bould, 437 So.2d 1061, 1063 (Fla.1983), “[t]he doctrine of law of the case is limited to rulings on questions of law actually presented and considered on a former appeal.” The defendant in that case contested the amount of punitive damages in one appeal and then argued in a subsequent appeal that the trial court had incorrectly instructed the jury on the issue of liability for punitive damages. The plaintiff maintained that the jury instruction issue was barred by the doctrine of the law of the case because it could have been raised in the earlier appeal. However, the supreme court squarely rejected that argument and decided the issue on the merits. The court held that the doctrine of the law of the case did not preclude review of the jury instruction issue merely because the defendant had failed to challenge the instruction in the prior appeal. Id. at 1065.
More recently, in Florida Department of Transportation v. Juliano, 801 So.2d 101 (Fla.2001), the supreme court reaffirmed the principle that an issue is not foreclosed by the doctrine of the law of the case merely because it could have been presented in an earlier appeal. Citing its earlier decision in U.S. Concrete, the court in Ju-liano emphasized that the doctrine is limited to issues of law that were “actually presented and considered” in a previous appeal. Juliano, 801 So.2d at 106. The court also noted that a corollary of this principle is that “a lower court is not precluded from passing on issues that ‘have not necessarily been determined’ ” in an earlier appeal in the same case. Id. (quoting Greene, 384 So.2d at 27). Accord Delta Property Management v. Profile Investments, Inc., 2012 WL 739193 (Fla. March 8, 2012).
The doctrine of the law of the case does not foreclose consideration of the retroactive applicability issue that is now before the court, because that issue has not been presented or decided on appeal. The previous appeal to this court involved a different point of law: whether the act of providing blood amounts to a medical service under the 2003 version of the statute. As we explained in the opinion, this was a question of “statutory interpretation.” LifeSouth, 970 So.2d at 381. That was the issue presented on appeal and that was the issue this court decided. The court was not asked to decide whether the statute could be applied retroactively, and the court did not venture an opinion on that point.
We acknowledge that the decision of this court in the prior appeal would foreclose an argument that providing blood is not a medical service as defined in the 2003 amendment to the statute. But that does not resolve the broader issue of whether the Fitchners can assert a claim against *276 the blood bank in this case. We concluded that the complaint should have been dismissed and we remanded the case to the trial court with instructions to dismiss. The logical effect of the remand was to open the case once again for the presentation of other claims and defenses.
From a procedural standpoint, this case is identical to the case the supreme court considered in Wells Fargo Armored Services Corp. v. Sunshine Security and Detective Agency, Inc., 575 So.2d 179 (Fla.1991). There, the district court of appeal had reversed a judgment for the plaintiff on the ground that the complaint failed to state a cause of action. On remand, the plaintiff sought to amend the complaint, but the amended complaint was dismissed. The district court held that the new issues the plaintiff attempted to raise in the amended complaint were barred by the doctrine of the law of the case. The supreme court reversed the district court on the ground that the law of the case did not bar consideration of the new theories asserted in the amended complaint. As the supreme court explained, “the law-of-the-case doctrine was meant to apply to matters litigated to finality, not to matters that remain essentially unresolved due to the erroneous ruling of a lower court.” Id. at 180.
In the present case, as in Wells Fargo, the effect of the previous appeal was not to decide the case, but rather to restore it to the pleading stage. The doctrine of the law of the case settles the issue of whether providing blood is a medical service under the 2003 amendment to the statute, but the parties are otherwise free to amend their pleadings to assert new claims and defenses.
When an appellate court holds that the trial court should have dismissed the complaint, the effect is precisely the same as it would have been had the trial court dismissed the complaint in the first instance. It would be illogical to hold that, if the trial judge dismisses a complaint for failure to state a cause of action, the plaintiff can amend to state new theories, but future amendments are barred by the doctrine of the law of the case if an appellate court directs the trial court to dismiss the complaint. The effect of the dismissal is the same in either case.
We are aware of the general rule prohibiting a party from amending a complaint on remand, but that rule was designed to prevent further litigation in a case that has been finally decided. It does not apply if the appellate court has reversed a decision made at an interlocutory stage of the trial court proceeding at a time when the losing party would have been entitled to amend. The distinction is aptly illustrated by the opinion in Dober v. Worrell, 401 So.2d 1322 (Fla.1981). In that case, the trial court granted summary judgment for the defendant on the ground that the statute of limitations had expired. The district court affirmed but remanded the case to the trial court to allow the defendant to assert a new theory that concealment of the negligence effectively tolled the running of the statute. The supreme court concluded that the plaintiff should not have been allowed to amend the complaint on remand and it reversed that aspect of the district court’s decision. Id. at 1323-24.
We would agree that the principle expressed by the court in Dober would apply here if the trial court had initially granted LifeSouth’s motion to dismiss the complaint, if the Fitchners had then declined an opportunity to amend, if the trial court had then entered a final judgment for Life-south, and if this court had affirmed the judgment on appeal. But the rule has no application here, because the Fitchners were the prevailing party in the trial court. *277 The trial court denied LifeSouth’s motion to dismiss the complaint. That decision has now been reversed, but the effect of the decision is to hold that the complaint does not state a cause of action, and the effect of the remand is to restore the case to the position it would have assumed had it been dismissed in the trial court.
The Wells Fargo decision is instructive on this point, as well. The court not only rejected the defendant’s “law of the case” argument, as we stated, but also expressly held that the plaintiff had a right to amend the complaint on remand. The court in Wells Fargo emphasized that the right to amend a complaint should be freely allowed whether the complaint is dismissed initially by the trial court or it is dismissed later at the direction of an appellate court. The right to amend is the same in either case. As the court explained, the effect of the appellate decision directing the trial court to dismiss the complaint for failure to state a cause of action “was to return this proceeding to the lower court as though the erroneous ruling never had been made, [citation omitted] In other words, the trial court was obliged to treat this case as though, without regard to the intervening appeal, a complaint had been filed that failed to state a cause of action.” Wells Fargo, 575 So.2d at 180.
We have no doubt that the right to amend a complaint on remand from a decision by an appellate court is a right that can be waived. However, the common feature of the cases that turn on the issue of waiver is that they involve an action that was construed as a knowing and intentional relinquishment of the right to assert the claim. For example, in Arky, Freed, Steams, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So.2d 561 (Fla.1988), the trial court directed a verdict for the defendants on a claim of legal malpractice but then permitted the plaintiff to amend the complaint to assert a different theory of malpractice. The supreme court held that it was error to allow the amendment, because the plaintiff was well aware of the defendant’s contention that the evidence of malpractice was beyond the scope of the original pleading yet the plaintiff elected to proceed to trial.[1] Id. at 563.
The court denied an opportunity to amend in Nguyen v. Roth Realty, Inc., 550 So.2d 490 (Fla. 5th DCA 1989), for similar reasons. The plaintiff in that case prevailed in the trial court but ignored repeated warnings that there may have been a fundamental defect in the complaint. Id. at 491-92. In Nguyen, as in Arky Freed, the plaintiff made a conscious election to continue with litigation without addressing a dispositive issue raised and presented in the trial court by the opposing party prior to the judgment.
This case is in a very different posture. The Fitchners did not rely on a ruling of the trial court on a debated issue with the idea that they could revisit the issue should they lose on appeal. Unlike the plaintiffs in Arky Freed and Nguyen, they did not make an affirmative decision to stand pat in the face of a dispositive argument. The Fitchners had no reason to make a claim that the statute could not be applied retroactively, because the trial *278 judge had determined that it did not apply to them in any event. To hold that a plaintiff in their situation must make every conceivable argument as a form of reversal insurance would promote a form of shotgun advocacy. This is not required under the law, nor is it a policy the courts should encourage.
Finally, we do not agree that the retroactivity argument is barred from further consideration because it was raised for the first time in a motion for rehearing. We agree that the trial judge has discretion to decline to consider a new argument on rehearing, but the trial judge in this case evidently believed that the court also lacked authority to consider the issue. In the order denying rehearing, the trial court stated that although the argument was “meritorious,” it could not be considered because it was not an argument the court had “overlooked” or “misapprehended.” [2]
This is the standard that applies to a motion for rehearing of an appellate decision. Rule 9.330(a) of the Florida Rules of Appellate Procedure states in material part that the motion must “state with particularity the points of law or fact that, in the opinion of the movant, the court has overlooked or misapprehended in its decision, and shall not present issues not previously raised in the proceeding.” This rule expressly limits the issues to those already presented, but no such limitation appears in the rule that applies in trial courts. Rule 1.530(a) of the Florida Rules of Civil Procedure provides that “[o]n a motion for rehearing of matters heard without a jury, including summary judgments, the court may open the judgment if one has been entered, take additional testimony, and enter a new judgment.”
It is clear from a comparison of the text of these two rules that the standard to be applied in trial courts is much broader than the one that applies on appeal. Rule 1.530 is not limited to a mistake the court has made. To the contrary, rehearing may be granted in an appropriate case to prevent an injustice that would be caused by an error or omission by one of the lawyers. In Fernandes v. Boisvert, 659 So.2d 412, 413 (Fla. 2d DCA 1995), for example, the appellate court held that the trial court abused its discretion by declining to consider an affidavit presented for the first time on rehearing. The affidavit did not contain any information that would qualify as newly discovered evidence, but it would have been sufficient to defeat a summary judgment had it been filed on time. Likewise, in AC Holdings 2006, Inc. v. McCarty, 985 So.2d 1123, 1126 (Fla. 3d DCA 2008), the appellate court held that the trial court had abused its discretion by declining to consider an affidavit filed for the first time on rehearing. The defendant retained new counsel after the court had entered summary judgment for the plaintiff, and the affidavit the lawyer filed on rehearing would have defeated the summary judgment, had it been filed on time.
We do not suggest that trial judges are required to consider new issues presented for the first time on rehearing. Our point is simply that they have the authority to hear new issues. In the present case, the proper exercise of discretion would have been to allow the argument on rehearing. The trial judge recognized that the retroactivity argument was meritorious. It is true that responsibility for the *279 failure to present the argument earlier lies with the Fitchners, not the trial court, but the error was one that could have been corrected easily and inexpensively. The proceeding on remand was still in the pleading stage. It would have been a simple matter to “open the judgment,” as provided in rule 1.530(a), and then to allow the parties to present their claims and defenses on the merits.
If we were to conclude that the motion for rehearing was properly denied on the ground that the retroactivity argument was raised too late in the game, the effect of our decision would be to foreclose a negligence claim via a statute that does not apply to the case. And our justification for doing this would be that it was not the trial judge’s fault that the action was foreclosed by the wrong statute. This would be an unnecessary triumph of procedure over substance.
This brings us to the question presented on the merits of the appeal: whether the statute can be applied retroactively. The Fitchners’ cause of action for negligence arose in the fall of 2002, when they learned that Chase had contracted West Nile Virus from the contaminated blood provided by LifeSouth. When Chase died in 2004, the Fitchners amended the complaint to seek damages for wrongful death, but this did not alter the accrual date of the underlying claim that LifeSouth had been negligent in screening the blood. The statute was amended in 2008 and, as we concluded in our earlier opinion, it now includes the act of providing blood within the services that qualify as medical services. Given this sequence of events, LifeSouth would be entitled to a notice of suit under the medical negligence statute only if the 2003 amendment including blood banks can be applied retroactively.
The courts presume that a statute will apply prospectively only and that it will not apply to conduct occurring before the statute was enacted. Attempts to apply statutes retroactively to pre-en-actment conduct are generally looked upon with disfavor in the law. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). The retroactive application of legislation runs contrary to one of the most basic functions of a statute: to give notice of the conduct the government seeks to regulate. As the Supreme Court stated in Eastern Enterprises v. Apfel, 524 U.S. 498, 532, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), summarizing the entire body of the law on this point, “Retrospective laws are, indeed, generally unjust.” (quoting 2 J. Story, Commentaries on the Constitution § 1398 (5th ed. 1891)).
Whether a statute can be applied retroactively is a question that has two parts. First, the court must determine whether the statute itself expresses an intent that it be applied retroactively. If the statute does express such an intent, the court must then decide whether a retroactive application would be constitutional. See Old Port Cove Holdings, Inc. v. Old Port Cove Condo. Ass’n One, Inc., 986 So.2d 1279, 1284 (Fla.2008). The statute must pass both parts of this test to be applied retroactively.
To satisfy the first part of the test, the Legislature must have expressed its intention to apply the law retroactively in language that is “too clear and explicit to admit of reasonable doubt.” See Trustees of Tufts College v. Triple R. Ranch, Inc., 275 So.2d 521, 524 (Fla.1973); see also Foley v. Morris, 339 So.2d 215, 216-17 (Fla.1976). The part of the legislation that addresses the intended application of the 2003 amendment to the medical malpractice statute reads as follows:
*280 It is the intent of the Legislature to apply the provisions of this act to prior medical incidents, to the extent such application is not prohibited by the State Constitution or Federal Constitution, except that the changes to chapter 766, Florida Statutes, shall apply only to any medical incident for which a notice of intent to initiate litigation is mailed on or after the effective date of this act.
Except as otherwise expressly provided in this act, this act shall take effect September 15, 2003.
Ch. 2003-416, §§ 86 & 87, Laws of Fla. These sections reveal an expectation on the part of the Legislature that the 2003 amendments will be applied retroactively, at least with respect to conduct that can be defined as a “prior medical incident.” Some of the changes made in 2003 would meet this definition.
For example, one of the changes the Legislature made in 2003 was to limit the amount of noneconomic damages that could be recovered against a health care provider. See id. at § 54. This change did not enlarge the class of defendants that would fall within the protection of the act. A doctor who is sued for malpractice would continue to have the same protections that were afforded under the presuit screening procedures in the prior law. The only difference would be that the non-economic damages flowing from the medical incident giving rise to the claim of liability would now be subject to the monetary limit set by the 2003 amendment.
It is readily apparent from the text of the statute that the Legislature intended for this part of the 2003 amendment to apply retroactively. See Raphael v. Shecter, 18 So.3d 1152, 1156 (Fla. 4th DCA 2009). By its terms, the new limitation on damages applies to “prior medical incidents.” This phrase appears to refer to prior medical incidents that would have been subject to the presuit screening requirements of the earlier statute. The intended effect of the amendment is to make the prior incident subject to the new cap on noneconomic damages.
The problem we have in this case, however, is that the part of the statute that includes blood banks cannot be said to refer back to a prior medical incident. Before the amendment, the action of a blood bank in providing contaminated blood was not considered to be a medical incident at all. Rather, it was treated as an act of ordinary negligence that would be subject to redress under the law of torts. The general statement in the law regarding retroactive applicability is clear, but we conclude from the text of the statute that the Legislature did not intend this statement to apply to a prior act that would not have been defined as a medical incident under the prior law.
If the Legislature had used a more general term like “prior act” or “prior act of negligence,” we could say that it meant to apply the statute as amended to the act of providing contaminated blood, even though such an act was not regarded as medical negligence before the amendment. However, the use of the phrase “prior medical incidents” leads us to conclude that the Legislature intended to make specific provisions of the new statute, like the cap on noneconomic damages, applicable to a medical incident that would have been protected under the more general provisions of the previous law.
In any event, we cannot say that the Legislature has clearly manifested an intent to apply the part of the statutes that pertains to blood banks retroactively. To arrive at such a conclusion, we would have to accept the notion that the phrase “prior medical incidents” was meant to include prior acts of negligence that were not de *281 fined as medical incidents under the prior law. This we cannot do. The very point of adding blood banks to the class of protected defendants in 2003 appears to have been to define their work as a medical service and therefore to protect them by the presuit screening procedures in the statute.
The absence of a clear expression of legislative intent would be enough, standing alone, to support our holding that the part of the 2008 amendment that includes blood banks does not apply retroactively. But apart from the issue of legislative intent, this change in the law could not be applied retroactively without impairing the plaintiffs constitutional rights. The amendment adds blood banks to the list of health care providers and in so doing it creates an entire new class of defendants who are entitled to the benefits of the medical malpractice statute. Additionally, as we concluded in our prior opinion, the statute provides for the first time that the act of supplying blood is a medical service, the responsibility for which cannot be determined in court unless the injured plaintiff has complied with the presuit notice requirement. These changes are not merely procedural. They affect the very nature of the cause of action that previously existed between a blood bank and an injured plaintiff.
As we previously stated, the court in Raphael concluded that the Legislature had intended to apply the cap on noneco-nomic damages retroactively. The court ultimately held, however, that a retroactive application of this part of the 2003 amendment would impair the vested rights of the plaintiff.[3] Raphael, 18 So.3d at 1156-58. On this point, the court reasoned that the right to assert a cause of action vests when the cause of action accrues. Because the plaintiffs claim for medical negligence had accrued before the 2003 amendment, the court concluded that a retroactive application of the new provision setting a cap on noneconomic damages would impair the plaintiffs vested rights. Id. at 1158.
For the same reason, the Fitchners’ common law negligence claim cannot be impaired by the part of the 2003 amendment that adds blood banks to the class of medical providers that are protected by the presuit screening requirements of the statute. The argument in this case is even stronger than the one asserted in Raphael, in that the point at issue here involves an entirely new class of protected defendants. Prior to the amendment in 2003, a claim against a blood bank for supplying contaminated blood was not burdened by any of the requirements the Legislature had seen fit to impose for suits against doctors and other health care providers.
LifeSouth argues that a retroactive application of this part of the 2003 amendment would not impair the Fitchners’ vested rights, because the presuit notice requirement is procedural. However, the Florida Supreme Court has concluded on several occasions that presuit notice requirements are substantive in nature. For example, in Williams v. Campagnulo, 588 So.2d 982, 983 (Fla.1991), the supreme court rejected an argument that the pre-suit notice requirement in a previous version of the medical malpractice statute was procedural and that it therefore violated the court’s rulemaking authority. The court stated that “[t]he statute was *282 intended to address a legitimate legislative policy decision relating to medical malpractice and established a process intended to promote the settlement of meritorious claims at an early stage without the necessity of a full adversarial proceed-ing_ We find that the statute is primarily substantive.” Id. The .court was considering the issue of procedure versus substance for a different reason, but the conclusion the court reached is no less applicable here.
In an analogous case, Menendez v. Progressive Express Insurance, 35 So.3d 873 (Fla.2010), the Florida Supreme Court held that the presuit notice requirement in the personal injury protection statute was substantive and not procedural. The court summarized its decision this way: “Because we conclude that the 2001 amendment creating the statutory presuit notice provisions constitutes a substantive change to the statute, we hold that it cannot be retroactively applied to insurance policies issued before the effective date of the amendment....” Id. at 875. This reasoning applies here, as well. Whether the presuit notice requirement is substantive or procedural does not turn on the subject matter of the statute. The nature of the requirement is the same for an insurance statute as it is for a medical negligence statute.
For these reasons we conclude that the Fitchners’ claim that the 2003 statute cannot be applied retroactively is not barred by the doctrine of the law of the case, that it was not waived merely because it had not been presented before, and that this court is not precluded from considering it. On the merits of the issue, we hold that the part of the 2003 amendment that includes blood banks within the protections of the medical malpractice statute cannot be applied retroactively to a cause of action accruing before the effective date of the amendment. Accordingly, we reverse the order of dismissal and remand the case for a trial on the merits of the claim of negligence.
Reversed and remanded.
CLARK, J., concurs.
SCHWARTZ, ALAN R., Senior Judge, Dissents.

. The Arky Freed case also differs in the respect that the earlier decision against the party seeking to amend was a decision on the sufficiency of the evidence. Had the trial judge directed a verdict for LifeSouth on the ground that the evidence presented by the Fitchners in the original complaint was insufficient, the Fitchners would not have had a right to amend. But in this case, as in Wells Fargo, the previous appellate decision leading to the remand was not a decision on the merits of the case, but rather a decision on the viability of the claim asserted in the complaint.

. The trial court also concluded that it lacked authority to consider the issue, because it had been presented for the first time in the Fitch-ners’ reply to LifeSouth’s response to the motion for rehearing. On this point, the trial judge was mistaken. The argument was presented in the motion for rehearing.

. The Third District reached the opposite conclusion in Weingrad v. Miles, 29 So.3d 406, 416 (Fla. 3d DCA 2010). To the extent that the decision in the case before this court turns on the existence of a vested right to assert the cause of action, we agree with the decision of the Fourth District in Raphael and Judge Cope’s dissenting opinion in Weingrad, 29 So.3d at 416-17.