DAVIS, Chief Judge.
Frances Young and her husband, Phillip W. Young, challenge the final summary judgment entered by the trial court in favor of Nighthawk Radiology Services and Jason Grennan, M.D., in the Youngs’ medical malpractice action.[1] We reverse and remand for further proceedings.
In their second amended complaint, the Youngs alleged that late on the evening of Friday, February 18, 2006, Mrs. Young was taken by ambulance to Naples Community Hospital (NCH) complaining of severe abdominal pain and vomiting. While still in the emergency room in the early morning hours of Saturday, February 19, 2006, several tests were run, including a CT scan. This scan was read at 3:36 a.m. by Dr. Grennan, who was physically located in Switzerland at the time. He then forwarded to the hospital staff his report indicating that the scan showed “unremarkable” results. However, based on the results of all the tests performed, Mrs. Young was admitted to the hospital. Because she continued to complain of abdominal pain, a magnetic resonance angiogram (MRA) was performed later that afternoon. The results of that test were received on the morning of Sunday, February 20, 2006, and showed a “filling defect in the superior mesenteric artery ... [e]m-boli suspected.” The CT scan originally reviewed by Dr. Grennan was then reevaluated by other personnel and revealed an “occlusion of the superior mesenteric artier [sic] by thrombus as well as embolic appearing thrombus in the aorta.” About an hour later, Mrs. Young underwent surgery to remove a blood clot from her superior mesenteric artery.
Mrs. Young was discharged from the hospital on April 12, 2006, following surgery and complications in the recovery *458 process. As the Youngs investigated the circumstances of Mrs. Young’s hospitalization and treatment, their attorney filed for an automatic ninety-day extension of the statute of limitations in medical negligence actions as provided for by section 766.104(2), Florida Statutes (2007).[2] On April 1, 2008, the Youngs gave notice of their intent to initiate a lawsuit to Naples Radiologists, the local provider of the hospital’s radiological services. Then, on June 17, 2008, they gave notice of that intent to Nighthawk Radiology, the company that provided nighttime radiological services for Naples Radiologists, and Dr. Grennan, an independent contractor with Nighthawk.
The Youngs filed suit on August 28, 2008, alleging medical malpractice on the parts of NCH, Naples Radiologists, Nighthawk, and Dr. Grennan.[3] Specifically, the Youngs alleged below that the first report of the CT scan prepared by Dr. Grennan was in error and that this initial misreading of the scan was the cause of the complications Mrs. Young later suffered. The Youngs maintained that the error in reading the CT scan was an act of medical malpractice by Dr. Grennan, who was under contract with Nighthawk Radiology to provide these services to Naples Radiologists. That is, Naples Radiologists was the local provider of radiological services for NCH pursuant to an exclusive contract between Naples Radiologists and the hospital. Naples Radiologists also had a contractual relationship with Nighthawk Radiology, an independent limited liability corporation organized in Idaho, to provide the radiological services to NCH between the hours of 8:00 p.m. and 8:00 a.m., 365 days a year. The Youngs’ amended complaint specified that Dr. Grennan was an independent contractor with Nighthawk and that it was this series of contractual relationships that brought the CT scan to Dr. Grennan for review on February 19.
All of the defendants moved for summary judgment, alleging that the Youngs failed to provide notice of their intent to sue within the two years required by statute. See § 766.106, Fla. Stat. (2006).[4] The trial court denied the motions of NCH and Naples Radiologists but granted the joint motion of Nighthawk and Dr. Gren-nan. In its order, the trial court determined that the Youngs were required to file their notice of intent by May 8, 2008, that the attempt to obtain a ninety-day extension pursuant to section 766.104(2) was ineffective, and that the Youngs’ June 17, 2008, notice to Nighthawk and Dr. *459 Grennan was served outside the notice period. However, the trial court’s order was styled “Proposed Order” and failed to contain words of finality. The litigation continued against NCH and Naples Radiologists for approximately seventeen months before the Youngs filed a motion for reconsideration and correction of the “proposed” order. In their motion for reconsideration, the Youngs pointed out the incorrect style of the order and the lack of words of finality and argued that such deficiencies rendered the order nonfinal and nonap-pealable. The Youngs also argued that the trial court’s findings regarding the Youngs’ attempt to obtain an extension of time were incorrect. The trial court denied the Youngs’ motion for reconsideration and instructed Nighthawk and Dr. Grennan to submit a properly worded final order. Nighthawk and Dr. Grennan submitted, and the trial court entered, the final order on appeal, which included the same findings as contained in the original “proposed” order.
This court reviews final summary judgments de novo. Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001). Summary judgment should only be granted when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Hodges v. Citrus World, Inc., 850 So.2d 648, 649 (Fla. 2d DCA 2003). Here, because Nighthawk and Dr. Grennan were not entitled to summary judgment as a matter of law, we must reverse.
Florida Rule of Civil Procedure 1.650(b)(1) provides that “notice of intent to initiate litigation sent by certified mail to and received by any prospective defendant shall operate as notice to the person and any other prospective defendant who bears a legal relationship to the prospective defendant receiving the notice.” On appeal, the Youngs argue that summary judgment was improper because pursuant to rule 1.650(b)(1), the April 1, 2008, notice they provided to Naples Radiologists was also effective notice to Nighthawk and Dr. Grennan because they were in a “legal relationship” with Naples Radiologists.
It is undisputed that the Youngs provided notice to Naples Radiologists on April 1, 2008. Such notice was timely pursuant to the trial court’s finding that the two-year notice period expired on May 8, 2008. In their pleadings below, the Youngs alleged a contractual relationship between Naples Radiologists and Nighthawk and that Dr. Grennan was an independent contractor with Nighthawk. The Youngs further alleged that the reason Mrs. Young’s CT scan was sent to Switzerland in the middle of the night for Dr. Grennan’s review was the legal contractual relationship he had with Nighthawk and the legal contractual relationship Nighthawk had with Naples Radiologists.
In response, Nighthawk and Dr. Gren-nan argue that their relationship with Naples Radiologists does not meet the definition of a “legal relationship.” They maintain that the term, as used in rule 1.650(b), refers to employees or servants. We disagree. First, there is no definition of “legal relationship” included in the rule. And second, in their answer to the Youngs’ amended complaint, Nighthawk and Dr. Grennan admitted that Nighthawk was in a written contractual relationship with Naples Radiologists[5] and that Dr. Grennan was an independent contractor for Nighthawk.[6] These are *460 both business relationships defined by the law of contracts that bestow legal rights and legal obligations upon the parties to the relationships. As such, notice to prospective defendant Naples Radiologists was notice to prospective defendants Nighthawk ■ and Dr. Grennan, rendering summary judgment improper as a matter of law.
Nighthawk and Dr. Grennan also argue that the Youngs did not raise the imputed notice theory at the first summary judgment hearing and that therefore they were precluded from raising it on rehearing. We reject this argument.
[Rjehearing may be granted in an appropriate case to prevent an injustice that would be caused by an error or omission by one of the lawyers. In Fernandes v. Boisvert, 659 So.2d 412, 413 (Fla. 2d DCA 1995), for example, the appellate court held that the trial court abused its discretion by declining to consider an affidavit presented for the first time on rehearing. The affidavit ... would have been sufficient to defeat a summary judgment had it been filed on time.
We do not suggest that trial judges are required to consider new issues presented for the first time on rehearing. Our point is simply that they have the authority to hear new issues. In the present case, the proper exercise of discretion would have been to allow the argument on rehearing.... It is true that responsibility for the failure to present the argument earlier lies with the [appellants], not the trial court, but the error was one that could have been corrected easily and inexpensively.
Fitchner v. Lifesouth Cmty. Blood Ctrs., Inc., 88 So.3d 269, 278-79 (Fla. 1st DCA 2012); see also Knowles v. JPMorgan Chase Bank, N.A., 994 So.2d 1218, 1220 (Fla. 2d DCA 2008) (“[A] trial court ... ‘has broad discretion to grant a rehearing of a summary judgment when the party seeking rehearing submits matters that would have created an issue precluding summary judgment if they had been raised prior to the hearing on the motion.’ ” (quoting Fatherly v. Cal. Fed. Bank, FSB, 703 So.2d 1101, 1102 (Fla. 2d DCA 1997))). To suggest that the trial court should not consider the applicable argument for the first time at rehearing would result in “an unnecessary triumph of procedure over substance.” Fitchner, 88 So.3d at 279.
Finally, Nighthawk and Dr. Gren-nan argue that because the Youngs waited for seventeen months after the entry of the “Proposed Order” to ask for a clarification of that order, they are estopped from seeking relief. We reject this argument as well. Nighthawk and Dr. Grennan had the opportunity to submit an order in final form at any time and did not do so. Furthermore, there is no showing of any detriment to Nighthawk and Dr. Grennan due to the passing of time. The discovery process continued between the Youngs and the other two defendants but did not include Nighthawk or Dr. Grennan. The only consequence of the delay was the erroneous assumption by Nighthawk and Dr. Grennan that they were no longer involved with the court proceedings. But the trial court maintained jurisdiction over them until a final judgment was entered and, thus, properly considered the Youngs’ motion for reconsideration/clarification.
In conclusion, because as a matter of law Nighthawk and Dr. Grennan were in a legal relationship with Naples Radiologists, the implied notice provision of rule 1.650(b)(1) was triggered and summary judgment was improper. We therefore re *461 verse and remand for further proceedings.[7]
Reversed and remanded.
ALTENBERND and CRENSHAW, JJ„ Concur.

. The Youngs filed a medical malpractice claim against the several appellees. The trial court granted summary judgment in favor of Nighthawk and Dr. Grennan but denied the motions for summary judgment filed by Naples Community Hospital and Naples Radiologists. That litigation remained pending at the time this appeal was initiated.

. Section 766.104(2) provides in pertinent part as follows: "Upon petition to the clerk of court where the suit will be filed and payment to the clerk of a filing fee, not to exceed $37.50, an automatic 90-day extension of the statute of limitations shall be granted to allow the reasonable investigation required by subsection (1).”

. The Youngs’ original complaint named only Naples Community Hospital and Naples Radiologists, P.A., as defendants. However, the Youngs filed an amended complaint on October 9, 2008, adding Nighthawk Radiology and Dr. Grennan as defendants.

. Section 766.106(2)(a) provides in part that "[a]fter completion of presuit investigation pursuant to s, 766.203(2) and prior to filing a complaint for medical negligence, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence.” Subsection (4) of the statute allows that ”[t]he notice of intent to initiate litigation shall be served within the time limits set forth in s. 95.11.” Section 95.1 l(4)(b), Florida Statutes (2006), provides that ”[a]n action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence.”

. By the terms of this written contract, Nighthawk’s compensation for the services it provided was paid by Naples Radiologists, not the hospital or the individual patients.

. The Youngs ultimately filed a second amended complaint, but the trial court granted summary judgment in favor of Nighthawk *460 and Dr. Grennan before they filed an amended answer.

. The Youngs also argue on appeal that the trial court erred in determining that their attempt to obtain a ninety-day extension of the notice period was unsuccessful. However, because we have concluded that summary judgment was improper under the terms of rule 1.650(b)(1), we need not address the sufficiency of the Youngs’ petition for an extension.