925 So.2d 476 (2006)
Mark CRAVEN and Donald de Pamphilis d/b/a Annie's Dream Ice Cream, Appellants,
v.
TRG-BOYNTON BEACH, LTD., Appellee.
No. 4D05-1773.
District Court of Appeal of Florida, Fourth District.
April 19, 2006.
*477 Thomas E. Kingcade of Thomas E. Kingcade, P.A., West Palm Beach, for appellants.
Mark F. Bideau and Jonathan C. Chane of Greenberg Traurig, P.A., West Palm Beach and Elliot H. Scherker and Daniel M. Samson of Greenberg Traurig, P.A., Miami, for appellee.
TAYLOR, J.
Mark Craven and Donald De Pamphilis d/b/a Annie's Dream Ice Cream, plaintiffs below, appeal a summary judgment entered against them on their claim for breach of a commercial lease. We reverse the summary judgment, concluding that the lease agreement is not unenforceable due to lack of consideration and that genuine issues of material fact remain as to whether the defendant's changes to the site plan would adversely affect the plaintiffs' ability to operate their ice cream store. However, we affirm the trial *478 court's ruling as to specific performance, because, as appellee, TRG-Boynton Beach, Ltd. (TRG), argues, requiring reconstruction of the development according to the original plans would entail excessive supervision by the trial court. Thus, specific performance was properly rejected as a remedy.
In 1998, plaintiffs met with Steve Baugh, the project manager for Ocean Breeze Festival Park, Inc. (Ocean Breeze), concerning a lease for a store in Ocean Breeze's proposed development at the Boynton Beach Marina. At the time, Ocean Breeze was planning to develop the marina with an old Key West-style fishing village atmosphere. The marina project envisioned a place where people could walk around, with easy access to retail shops and offices above the shops. Rental apartments were to be built on the west side of the development. Plaintiffs planned to open a homemade ice cream store, "Annie's Dream Ice Cream," in the retail section of the development.
Ocean Breeze presented plaintiffs with a draft lease. Plaintiffs had already picked a location on the site plan that they felt very strongly about. The first lease presented was not specific enough about the location, so they obtained an amendment to designate the location. They also deleted a provision about relocation, because they did not want to be relocated. Ocean Breeze accepted the amendments, which were incorporated into the final draft.
Ocean Breeze gave plaintiffs a diagram of the project before the lease was signed. Plaintiffs chose their location from that site plan. It was designated as B-116 and B-117 in retail building B, in the spaces adjacent to the restaurant known as Belloti's. Although the final draft of the lease made reference to the leased premises as spaces 116 and 117 on the site plan (which it recited was an attached exhibit), the "floor plan" page attached at the time of execution and at the time of recording was actually blank. Plaintiffs received a copy of the site plan from the landlord by tele-fax. However, there was never any question about where spaces 116 and 117 were located.
The most critical provision of the lease is the following:
2. Premises
(a) Description of Premises. Landlord leases to Tenant, and Tenant leases from landlord, the Leased Premises described in Section 1. The Leased Premises is highlighted or otherwise indicated on a diagram of the Project attached hereto and incorporated herein as Exhibit "A." Exhibit "A" sets forth the general layout of the Project and shall not be deemed a warranty on the part of the Landlord that the Project is or will be exactly as indicated on such diagram. Landlord may increase, reduce, or change the number, dimensions, and locations of roadways, walks, buildings, and parking areas as Landlord from time to time deems proper notwithstanding, that such modifications by Landlord as provided for herein shall in no manner whatsoever, adversely affect the ingress, egress, visibility or ability of Tenant to operate Tenant's business.

(emphasis added).
The lease describes the rental term as ten years, with two five-year options after that. The rent, including common area and other charges, was to be $1,739.08 per month for rental of the retail "shell." According to the lease, the security deposit of $1,739.08 was to be paid at the time the lease was executed. The plaintiffs never paid the landlord a security deposit (or any other money) in connection with the lease. It is undisputed that the landlord told plaintiffs that they did not have to provide *479 the security deposit until the building was completed and they took possession.
Paragraph 23 of the lease provides for instances of tenant default. In the case of monetary defaults, the tenant is to be given ten days' written notice by the landlord in which to remedy the default and avoid the landlord's remedies for default, which include termination of the lease.
Paragraph 24 provides that "no waiver by Landlord of any provision of this Lease shall be deemed to have been agreed upon unless expressed in a writing signed by the parties." Similar language can be found in the lease's merger clause.
The City of Boynton Beach approved the project as originally conceived in February 2000. After the lease was executed, the development twice changed hands. First, it was sold by Ocean Breeze to AERC, who held the property for a couple of years. It was then sold to TRG, the current owner.
In 2002, TRG completely redesigned the original project. The entire "retail B" building, which was to house Annie's Dream, was eliminated and replaced with townhomes. The TRG architect testified that the "retail B" building had to be changed to comply with the building code for the planned adjacent cul-de-sac. He also testified about other site plan revisions required by the city.
While awaiting city approval for the new site plan, TRG informed plaintiffs that the original location for Annie's Dream would no longer be available. It offered plaintiffs commercial space in the newly designed project. Plaintiffs rejected the offer and filed suit against TRG, seeking to require TRG to develop the property as proposed in the original site plan or pay money damages.
The Second Amended Complaint contained two counts: 1) specific performance and 2) damages. Plaintiffs alleged that the lease agreement required TRG to develop the marina project according to the original Ocean Breeze site plan and that the project's redesign would adversely affect their ability to operate their business. Defendant moved for summary judgment arguing, inter alia, that the lease was unenforceable because it lacked consideration due to plaintiffs' failure to pay the security deposit. Defendant did not argue that the failure to pay the security deposit was a breach of the lease. The trial court entered summary judgment as to the specific performance count. The order stated, in pertinent part:
No competent evidence was offered by the Plaintiffs that moving the location of the building in which their ice cream store was to be located would adversely affect the ingress, egress, or business of Annie's Dream Ice Cream Store. Thus, Defendant's redesign of the Project was permitted under ¶ 2(a) of the Lease.
The order added that the remedy of specific performance was not available as it would require the court to become "inextricably intertwined" with the project being developed by TRG. It also added, as an alternative rationale, that no consideration (security deposit) was provided by plaintiffs, thus making the lease "unenforceable." The trial court, however, did not find that the lease had been breached by plaintiffs' failure to pay the security deposit. When the defendant later moved for summary judgment as to the remaining damages count, the trial court entered summary judgment on the damages claim as well.
The standard of review of the entry of summary judgment is de novo. Everett Painting Co. v. Padula & Wadsworth Constr., Inc., 856 So.2d 1059, 1061 (Fla. 4th DCA 2003). The law is well settled in Florida that a party moving for summary *480 judgment must show conclusively the absence of any genuine issue of material fact, and the court must draw every possible inference in favor of the party against whom a summary judgment is sought. Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla.1977); Holl v. Talcott, 191 So.2d 40 (Fla.1966). A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law. Shaffran v. Holness, 93 So.2d 94 (Fla.1957). The burden is initially on the movant. Only where the movant tenders competent evidence in support of his motion does the burden shift to the other party to come forward with opposing evidence. Lenhal Realty, Inc. v. Transamerica Commercial Fin. Corp., 615 So.2d 207 (Fla. 4th DCA 1993).
Plaintiffs alleged that TRG should be required to build the retail and office building as proposed in the original site plan because any change would adversely affect the ingress, egress, and visibility of their business or plaintiffs' ability to operate their business. According to De Pamphilis's testimony, the new project completely altered the original marina concept and replaced it with a "gated community" atmosphere. In place of the retail building, which was designed to attract the public for strolls around the marina and visits to the boutiques and shops, the new site plan called for a row of townhouses. De Pamphilis testified that the entire project was made much less accessible to the public because people are not inclined to walk and roam around the front of townhouses. Thus, according to De Pamphilis, the plaintiffs' ability to do business would be negatively impacted by the changes to the development.
The parties agree that this case turns on the evidence regarding whether the redesign of the project will "adversely affect ... the ability of Tenant to operate Tenant's business." TRG has not pointed to evidence in the record which would establish that Annie's Dream would be unaffected by the changes to the development. Our independent review of the record discloses only one witness's testimony which could conceivably have shifted the burden of proof. Lawrence Justiz, a former director of land acquisition for TRG, testified that in his opinion the alternate sites being offered to plaintiffs provide the same visibility, ingress and egress and ability to run the business as the original plan. However, he offered this opinion without any supporting facts or explanation. Conclusory, self-serving testimony is not sufficient to shift the burden of proof. See Heitmeyer v. Sasser, 664 So.2d 358 (Fla. 4th DCA 1995); see also Dep't of Transp. v. Spioch, 642 So.2d 788, 791 (Fla. 1st DCA 1994).
Even if Justiz's testimony did somehow shift the burden, it was met squarely by the testimony of Donald De Pamphilis. As mentioned above, De Pamphilis explained how plaintiffs' ability to do business will be negatively affected by the new design. In addition, Steve Baugh, the representative of the original landlord, testified that elimination of the retail building will adversely affect public access and operation of the plaintiffs' business. To grant summary judgment in this case, the trial court would have to find TRG's conclusory self-serving testimony competent, while finding the plaintiffs' somewhat less conclusory testimony incompetent. This would be improper. See Petruska v. Smartparks-Silver Springs, Inc., 914 So.2d 502 (Fla. 5th DCA 2005) (a court may not weigh the evidence or judge the credibility of witnesses in arriving at summary judgment). Because TRG did not meet its burden to show conclusively the absence of any genuine issues of material fact regarding the adverse effect of TRG's relocation of the *481 retail building on plaintiff's business operation, visibility, ingress and egress, the trial court erred in granting summary judgment.
The trial court accepted TRG's argument that because the plaintiffs did not pay the security deposit, the contract lacked consideration and hence was unenforceable. However, plaintiffs' executory promise to pay rent is ample consideration to support the lease. See Henderson v. Morton, 109 Fla. 300, 147 So. 456, 457 (1933); Harper v. Bronson, 104 Fla. 75, 139 So. 203, 208 (1932). Further, TRG never argued below or on appeal that the failure to pay the security deposit was a breach justifying termination of the contract. In any event, this argument would have failed, because TRG never gave the plaintiffs written notice of the breach and the ten day period thereafter within which to cure, as called for by the lease's express terms.
Although the trial court erred in granting summary judgment on the damages claim, it properly ruled that specific performance was not available because such relief would require the court to become inextricably intertwined with the project's development. In the seminal case of Calumet Co. v. Oil City Corp., 114 Fla. 531, 154 So. 141, 142 (1934), the Florida Supreme Court explained:
Where the main object of a contract is to secure the development of land by the drilling of test well (sic) for oil and gas on it, to the end that it may be determined whether the land contains oil or gas, and where the nature and character of the drilling to be done is left almost entirely to the good faith, judgment, discretion, and skill of the one undertaking to drill the test wells contracted for, so that the performance of the contract requires some personal supervision that will extend over a considerable period of time, such contract, in so far as it affects the contracting driller, is incapable of specific performance by decree against him, because of the inability of the court to undertake supervision of performance of such a contract.
Here, a decree of specific performance would require the court to oversee the demolition of eleven new townhomes (valued at $5 million) and the reconstruction of the property according to the original plan, assuming that the city would even permit such a change back to the original plan.
Generally, Florida, like the vast majority of other jurisdictions, does not permit specific performance of a lease, even in ordinary circumstances, because the court would be forced to undertake an excessive supervisory responsibility. See Cardinal Inv. Group, Inc. v. Giles, 813 So.2d 262, 263 (Fla. 4th DCA 2002); see also Mayor's Jewelers, Inc. v. State of Cal. Pub. Employees' Retirement Sys., 685 So.2d 904, 904-05 (Fla. 4th DCA 1996). This principle applies with extra force where, as here, the leased premises have yet to be built and would, in fact, require the destruction of new homes and dispossession of the residents to even begin construction.
For the reasons stated above, we reverse the trial court's final summary judgment on the damages claim and affirm as to the specific performance count.
Affirmed in part, Reversed in part and Remanded.
POLEN and SHAHOOD, JJ., concur.