993 So.2d 167 (2008)
SHERIDAN HEALTHCORP, INC., Santiago H. Triana, M.D., individually, and Santiago H. Triana, M.D., Inc., Appellants,
v.
Carl C. AMKO, M.D., Carl C. Amko, M.D., P.A., Fort Lauderdale Surgery Associates, and AAA Surgeons, Inc., Appellees.
No. 4D07-3745.
District Court of Appeal of Florida, Fourth District.
October 29, 2008.
*168 William R. Amlong, Karen Coolman Amlong and Jennifer Daley of Amlong & Amlong, P.A., Fort Lauderdale, for appellants.
Harvey J. Sepler of Harvey J. Sepler, P.A. and Marc J. Tannen of Marc J. Tannen, P.A., Hollywood, for appellees.
WARNER, J.
In this action for breach of fiduciary duty against members of a joint venture for the provision of medical services and breach of contract against the controlling entity, the trial court entered summary final judgment, finding that the common purpose of the joint venture had been accomplished and thus no breach occurred. It further found that the oral agreement had not been breached. We conclude that material issues of fact remain and reverse.
In 1996, North Broward Hospital District ("NBHD") became a designated Trauma Level II facility for the Broward General Medical Center ("BGMC"). As a result, it needed to provide general surgery services in its emergency room but did not want to contract individually with various physicians to provide coverage. It informed various general surgeons it would like them to form a single corporation with which NBHD could contract to provide medical services for uninsured and indigent patients at BGMC.
A group of doctors consisting of Aiden O'Rourke, M.D.; Richard Johnson, M.D.;[1] Carl C. Amko, M.D.; Lucien Armand, M.D.; Santiago H. Triana, M.D.; and several other physicians, decided to incorporate Fort Lauderdale Surgery Associates, P.A. ("FLSA") to be the contracting entity to provide health care services in the emergency room. They intended that their individual practices would contract with FLSA to provide the surgery services. *169 They intended to share jointly in the enterprise based on the degree of participation of each doctor and to contribute their services to the enterprise in consideration of being part of the group. An attorney drafted and subsequently filed on June 10, 1996, the articles of incorporation which named the following directors: Dr. O'Rourke as president, Dr. Johnson as vice-president, Dr. Amko as secretary, and Dr. Armand as treasurer. The articles listed Dr. O'Rourke as the sole subscriber who held 500 shares of stock.
FLSA and NBHD entered into a Physician Agreement for Payment for Uncompensated Care General Surgery Services Agreement. The Physician's Agreement required FLSA to furnish the hospital with physicians of a certain caliber and to assure that the contracting physicians would comply with the terms and conditions of the Physician Agreement. NBHD included a contractual requirement that Dr. O'Rourke act as the medical director of FLSA and oversee the independent contractor physicians.
Dr. Triana and all of the other members of the group of physicians signed individual independent contractor agreements confirming this arrangement, although FLSA never executed the agreements. Nevertheless, the parties operated under the terms of those agreements. Dr. Triana subsequently sold his practice to Sheridan Healthcorp, Inc. who expected to collect the income Dr. Triana would generate from the services agreement between the doctor and FLSA.
After formation of FLSA, all participants in the group, including Dr. Triana, made decisions about the finances of FLSA, including what bonuses would be paid and to whom. The group also adopted "by-laws" which included a provision that any decision making would be by unanimous vote among the members.
During the time the agreement was in force, Dr. Triana treated a patient who died while in his care. As a result, Drs. O'Rourke, Armand, and Amko conducted a meeting and decided to terminate Dr. Triana. Dr. Amko, as secretary of FLSA, signed the letter of termination. Believing that he was a shareholder of FLSA and that no action to terminate his services could occur without unanimous consent of all the shareholders, Dr. Triana protested, only to find out that he had never been issued shares of FLSA.
Dr. Triana and Sheridan filed suit against FLSA/AAA,[2] Drs. O'Rourke, Amko, and Armand, individually, and against each doctor's practice. In count one Dr. Triana alleged that Drs. O'Rourke, Amko, and Armand breached the fiduciary duty owed to Dr. Triana as a co-joint venturer. He described the joint venture as the group of physicians who combined "to form a group to be the contracting legal entity with the NBHD for the purpose of providing health-care services, and specifically, general surgery services, in the emergency room . . . and to share jointly based on the degree of participation of each doctor, in the profits, and the risk of loss from their participation in the group. Each doctor agreed to contribute his services to the enterprise in consideration for being part of the Group." In accordance with this agreement, FLSA was formed to be the contracting legal entity with NBHD, but the corporation failed to observe corporate formalities, including the issuance of shares, or Dr. Triana was purposely excluded, without his knowledge, from shareholder status. He alleged that the individual defendants breached their fiduciary duty by terminating *170 his opportunity to provide medical services and thus be compensated for them, by failing to distribute Dr. Triana's full share of bonus money, and by failing to issue Dr. Triana shares of FLSA stock.
In a second claim against FLSA, he alleged that when terminating his services, FLSA breached a verbal agreement with Sheridan to provide those services. Both counts sought damages incurred in the past and continuing indefinitely into the future.
After answering and raising several affirmative defenses, Dr. Amko and FLSA/AAA moved for summary final judgment which the trial court entered. It concluded that the joint venture, if it existed, terminated when the purpose for its creation was achieved by the formation of FLSA. Applying corporate law, the court concluded that the officers' actions were protected by the business judgment rule. Because the decision to terminate Dr. Triana was reasonable, Dr. Amko was not personally liable. The court also concluded that FLSA did not breach its oral contract with Sheridan when it terminated Dr. Triana's services because Dr. O'Rourke had the authority to terminate physicians as medical director under the Physician's Agreement. Turning to damages, the court held that Dr. Triana failed to prove any damages. Dr. Triana and Sheridan appeal this judgment.
On appeal, "[t]he standard of review of the entry of summary judgment is de novo." Craven v. TRG-Boynton Beach, Ltd., 925 So.2d 476, 479 (Fla. 4th DCA 2006). "[T]he court must draw every possible inference in favor of the party against whom a summary judgment is sought." Id. at 480. The trial court's entry of a summary judgment is in error unless "the facts are so crystallized that nothing remains but questions of law." Id.
The trial court determined that the breach of fiduciary duty claim failed because the joint venture had accomplished its purpose, namely to create a corporation to be the legal entity to contract with NBHD to provide emergency room surgery services. Both the court and Dr. Amko rely on the statements in Dr. Triana's complaint and various pleadings to support the notion that the common purpose was to create the corporation. However, a review of the complaint, as well as the other filings, shows that Dr. Triana contends that the joint venture was formed to provide emergency room surgical services to NBHD and to do it through a corporation and related contracts with that corporation.
This is not a distinction without a difference. A joint venture is similar to a partnership and is, in fact, "governed by the principles which constitute and control the law of partnership." Kislak v. Kreedian, 95 So.2d 510, 515 (Fla.1957) (quoting Proctor v. Hearne, 100 Fla. 1180, 131 So. 173, 176 (1930)). A joint venture terminates when the objects of its creation have been accomplished. Id. at 514. As explained by our supreme court in Donahue v. Davis, 68 So.2d 163, 171 (Fla.1953): "The fact that joint adventurers may determine to carry out the purpose of the agreement through the medium of a corporation does not change the essential nature of the relationship." (emphasis supplied). Thus, the existence of the corporation may not necessarily end the joint venture if its purpose was not merely to create the corporation.
Dr. Triana claims that the group intended to join together to provide general surgical services to the emergency room and NBHD for a fee. They intended to set up one corporation, FLSA, as the legal entity to contract with NBHD. Each of the doctors in the joint venture then would *171 contract with FLSA to provide those services. Thus, the sole object of the joint venture was not to create FLSA but to create the necessary structure to provide services to the emergency room for a profit to the members of the venture. FLSA itself provided no emergency room services. Thus, it did not in and of itself fulfill the "common purpose" alleged by Dr. Triana to provide such services. Dr. Triana also claims the corporation did not act like a corporation and never followed any of the formalities. While Dr. Amko claims the opposite, there are disputed issues of fact as to the existence and common purpose of the joint venture.
If a joint venture exists, the partners owe a fiduciary duty to each other. See Donahue, 68 So.2d at 171; Gossett v. St. Paul Fire & Marine Ins. Co., 427 So.2d 386, 387 (Fla. 4th DCA 1983) ("There is a fiduciary relationship between joint venturers requiring that they deal with each other in utmost good faith, fairness and honesty."). The trial court did not apply this standard but instead relied on the corporate business judgment rule in determining that Dr. Amko could not be liable. The trial court thus applied the wrong standard, because it found that the joint venture had completed its purpose by the formation of FLSA. As there remain material issues of fact as to the existence of a joint venture and its purpose, we reverse for further proceedings as to count one.
As to the second claim, the trial court concluded that the independent contractor agreement, signed by Dr. Triana but never executed by FLSA, constituted the best evidence of the terms of any verbal agreement between FLSA and Sheridan. While that may suffice to permit a jury to decide the issue, it does not conclusively show that all of the terms of the independent contract were part of the alleged oral agreement. Assuming, but not deciding, that the verbal contract contains all of the terms of the written contract, we still conclude that material issues of fact remain as to whether the oral contract was breached.
The unexecuted written contract provided that Dr. Triana "by skill and qualification, shall meet and maintain the standards of the Medical Staff of [BGMC]." The contract allowed FLSA to terminate the contract if Dr. Triana "breach[ed] any of the terms and/or conditions of this Agreement, as determined in the sole reasonable discretion of" FLSA. The contract also allowed FLSA to terminate Dr. Triana if he was in breach or caused FLSA to be in breach of the Physician's Agreement. The Physician's Agreement provides the standard of care to which all physicians provided by FLSA must adhere. To ensure adequate care, the Physician's Agreement specifically authorized Dr. O'Rourke, as medical director, to ensure that the independent contractor physicians provided quality medical care.
FLSA argues that Dr. Triana's termination was warranted because he provided substandard care to the patient who died while in Dr. Triana's care. In support of this claim, FLSA filed an affidavit executed by Dr. David Droller who was a member of the Quality Assurance and Case Management panel at BGMC. He reviewed the records and expressed concern that Dr. Triana did not provide an adequate level of care, which he voiced to Dr. O'Rourke. Nevertheless, in opposition to this affidavit, Dr. Triana points to the absence of any peer review activity or malpractice issues regarding any of Dr. Triana's patients. Dr. Triana is still on staff at BGMC, the hospital never disciplined him or suspended his privileges, and the deceased patient's family did not file a malpractice claim.
*172 The written contract provides for termination of the contract should the doctor lose his privileges at BGMC. It also requires the physician to abide by the rules and regulations of the medical staff and to continue in good standing, including meeting the standards of the medical staff by skill and qualification. Because Dr. Triana continued on the staff without any discipline, an issue of fact remains as to whether Dr. Triana breached any condition of the contract at all and whether the termination of Dr. Triana's contract with FLSA was reasonable, the standard of the exercise of discretion under the alleged contract. In light of the foregoing, there exists a conflict in the evidence regarding whether Dr. Triana's actions warranted termination by FLSA. Brewer v. Gulfcoast Transit Co., 679 So.2d 341, 342 (Fla. 2d DCA 1996) (resolution of an evidentiary conflict cannot be made by summary judgment). Thus, the trial court erred in granting the motion for summary judgment as to FLSA's breach of its oral agreement with Dr. Triana and Sheridan.
Finally, through a quite complex set of calculations advanced by FLSA, the trial court determined that neither Sheridan nor Dr. Triana was damaged as a result of any alleged breaches of fiduciary duty or breach of contract. It appears to us that those calculations are based on assumptions as to payment rates and numbers for which there is no authenticated proof. The records relied on to construct the amount of payments do not appear to be supported by any affidavit of authenticity. Furthermore, the trial court's conclusions were based in part upon the failure of Dr. Triana and Sheridan to present evidence to support their claim. In summary judgment proceedings, the burden is not on the opponent to submit evidence until the movant tenders competent evidence in support of the motion. See Craven, 925 So.2d at 480. Finding that the trial court's conclusions on damages are not based upon a proper application of the burden of proof, we reverse on this issue also.
Reversed and remanded for further proceedings.
STONE and DAMOORGIAN, JJ., concur.
NOTES
[1] Dr. Johnson died on June 7, 2000, prior to actions on which Dr. Triana based his law-suit.
[2] AAA became the successor corporation to FLSA.