VAN NORTWICK, J.
John R. Feris, Jr. appeals the trial court’s entry of final summary judgment on count I of his complaint which asserted a slip-and-fall cause of action against Club Country of Fort Walton Beach, Inc. (Club Country), pursuant to section 768.0710, Florida Statutes (2009). As explained below, because there are genuine issues of material fact that preclude summary judgment, we reverse and remand for further proceedings consistent with this opinion.

Factual and Procedural Background

Feris filed a complaint alleging that, while he was an invitee on Club Country’s premises, Club Country negligently maintained the premises by allowing a slippery substance, possibly containing alcohol, to remain on the premises; that Club Country failed to warn him of the condition; that he slipped and fell in the slippery substance; that Club Country knew or should have known of the dangerous condition because it permits patrons to take drinks onto the dance floor in the area in which he slipped and fell; that Club Country caused or created this condition, or knew or should have known of the condition because it existed long enough for Club Country to have discovered it; and that he suffered bodily and other injury as a direct and proximate result of Club Country’s negligence.[1] Club Country responded with an answer and affirmative defenses.
Club Country filed a motion for summary judgment, arguing that section 768.0755, Florida Statutes (2010), requires a plaintiff to establish the defendant’s knowledge of the dangerous condition. Further, Club Country asserts that, while constructive knowledge may be established by showing that the condition existed for such a length of time that the defendant should have known of the condition through the exercise of ordinary care, here there was no evidence as to how long the slippery substance leading to Feris’ fall had been on the floor at Club Country’s premises.
Feris filed affidavits and deposition transcripts in opposition to the motion for summary judgment, including depositions from himself, Laura Sandy, and Darius Parker. In his deposition, Feris testified that Sandy and Shannon Schillaci saw him fall, at which time they were standing on the dance floor with drinks in hand. He further testified that, while Club Country had a policy against allowing drinks on the dance floor, the policy was ignored and Club Country staff were present when the fall occurred and it was obvious that people had drinks on the dance floor. Feris also stated that the first time he noticed the substance on the floor was after he had fallen; that after he fell, the substance on which he slipped was on his clothing and smelled of alcohol; that he did not have a drink with him when he fell on the dance floor; and that he had no idea how the substance got on the dance floor or how long it had been there prior to the fall.
*533 Sandy testified at deposition that she did not see what Feris slipped on, but believed it had to have been on something based on the way he fell. Further, as soon as Feris was helped off the dance floor, a Club Country employee went to the location where Feris fell and wiped the area. Sandy stated that she did not see anyone spill a drink on the floor where Feris slipped, but remembered that “everyone” had drinks- on the floor that night. She added that she had seen many people spill drinks on the dance floor on other occasions and that she was not sure if Club Country had a policy about drinks on the dance floor, but, if such a policy exists, it is not enforced and there is no signage in the room indicating a policy.
Darius Parker testified at deposition that, after Feris fell, he noticed that the floor where the accident occurred was wet. He stated that the accident occurred near an audio speaker and that patrons often placed their drinks on the speakers. Further, he testified that he had seen people with drinks on the dance floor and people spill their drinks on the dance floor. Parker stated that he had no idea how long the spill existed or how it was caused, and that he did not know if Club Country had a drink policy or if any signs notifying of such policy were in the dance room.
Feris also submitted a memorandum of law in opposition to the motion for summary judgment, arguing that section 768.0710 applied to the case and that the statute did not require him to prove Club Country’s actual or constructive knowledge of the dangerous condition. At the hearing on the motion for summary judgment, Club Country argued that there was no evidence as to how long the substance was on the floor, therefore Feris could not create a reasonable inference from which the jury could conclude that Club Country created or allowed a dangerous condition to exist. Feris contended that he had offered testimony that, if Club Country had a policy prohibiting drinks on the dance floor, the policy was not enforced in the room where the accident occurred, which at least created a question of fact on that issue.
The trial court held that subsection (2)(b) of section 768.0710, requires “some evidence of negligence by failing to exercise reasonable care in the maintenance, inspection, repair, warning or mode of operation of the business premises,” and that no such evidence appeared in the record. Based on that reasoning, the trial court pronounced summary judgment in favor of Club Country, which was followed by a written order to that effect. Feris filed a motion for rehearing, which the trial court denied. This appeal ensued.

Analysis

A trial court’s order granting a motion for summary judgment is reviewed de novo. Ramsey v. Home Depot U.S.A, Inc., 124 So.3d 415, 416 (Fla. 1st DCA 2013). “Summary judgment should be entered only when there is no genuine issue of any material fact, and even the slightest doubt as to the existence of such a question precludes summary judgment.” Id. at 416-17 (quoting Laidlaw v. Krystal Co., 53 So.3d 1128, 1129 (Fla. 1st DCA 2011)).
Under section 768.0710(2), Florida Statutes (2009), which was in effect when Fer-is’ cause of action accrued, a plaintiff must plead and prove the following three elements:
(a) The person or entity in possession or control of the business premises owed a duty to the claimant;
(b) The person or entity in possession or control of the business premises acted negligently by failing to exercise reasonable care in the maintenance, inspection, repair, warning, or mode of operation of the business premises. Actual or con *534 structive notice of the transitory foreign object or substance is not a required element of proof to this claim. However, evidence of notice or lack of notice offered by any party may be considered together with all of the evidence; and
(c) The failure to exercise reasonable care was a legal cause of the loss, injury, or damage.
Section 768.0755, Florida Statutes (2010), which became effective July 1, 2010, approximately a month before Feris filed his complaint, provides that:
(1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
(a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
(b) The condition occurred with regularity and was therefore foreseeable.
(2) This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.
Thus, under either statute, to survive a motion for summary judgment a plaintiff must show sufficient facts, taken as true, to create a genuine issue of material fact that the party in control of the premises owed a duty of reasonable care to the plaintiff; that the defendant breached the duty of care (and had actual or constructive knowledge of the existence of the breach or dangerous condition when moving under section 768.0755); and that the defendant’s breach was the legal cause of the plaintiffs injuries or damages.
Here, Feris showed that he was Club Country’s business invitee, which would trigger a duty of reasonable care on Club Country’s part towards him. Food Lion, LLC v. Monument/Julington Assoc. Ltd. Partnership, 939 So.2d 1106, 1107-08 (Fla. 1st DCA 2006) (“A landowner owes a business invitee a duty not only to react to hazards of which it has notice but also to inspect to ensure conditions are safe or, at the least, that hazards (unless open and obvious) are discovered and warned against.”). Club Country’s primary contention is that Feris has offered no evidence as to its knowledge or notice of the existence of the transitory substance on the dance floor that created a dangerous condition. Indeed, the trial court predicated its entry of summary judgment in Club Country’s favor on this perceived lack of evidence as to Club Country’s knowledge or notice. In other words, the trial court found that Feris had failed to present sufficient evidence to create a genuine issue of material fact on the question of Club Country’s breach of its duty of care.
While none of the deposition testimony offered by Feris establishes how the substance that caused Feris’ accident came to be on the dance floor, each deponent testified that patrons in the dance room where the fall occurred routinely took drinks onto the dance floor, which commonly resulted in spills on the dance floor. Additionally, both Feris and Sandy testified that Sandy and her friend were on the floor with their drinks when Feris’ accident occurred. Further, Parker testified that Feris’ fall took place near a speaker, and that patrons customarily put their drinks on the speakers. Finally, Feris and Parker each stated that the spot where Feris fell was wet, and Feris testified that after the fall his jeans were wet with a substance that smelled like alcohol.
*535 We conclude that the testimony of Feris, Sandy, and Parker presents circumstantial evidence from which a jury could infer that Club Country or its agents allowed or caused a dangerous condition to exist, or that this condition existed with such regularity that Club Country knew or reasonably should have known of its existence. If, as the deposition testimony reflects, it was normal for patrons to take and spill drinks on the dance floor in the room where the fall occurred, it could logically be inferred that such was done with either Club Country’s allowance or actual knowledge. Similarly, if drinks were typically taken and spilled on the dance floor, one could reasonably deduce that Club Country would have discovered the presence of drinks and the attendant spills through the exercise of ordinary care in inspecting the premises. Therefore, the testimonial evidence presented here would be a valid basis upon which a jury could find that Club Country “acted negligently by failing to exercise reasonable care in the maintenance, inspection, repair, warning, or mode of operation of the business premises.” § 768.0710. Furthermore, this evidence could form the basis of a jury’s charging Club Country with constructive knowledge based on the dangerous condition’s existence “for a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or [that] [t]he condition occurred with regularity and was therefore foreseeable.” § 768.0755. Accordingly, under either statute, Feris has met his burden of pleading and offering sufficient evidence as to the breach of duty element of a Florida transitory substance/premises liability claim in order to survive a motion for summary judgment.

Retroactive Application

Because of our holding, whether section 768.0755 applies retroactively is not dispositive of the issue at bar. Nevertheless, we observe that:
The Florida Supreme Court has adopted a two-pronged test for determining whether a statute may apply retroactively: a reviewing court must ascertain (1) whether the Legislature clearly expressed its intent that the statute have retroactive application; and if so, (2) whether retroactive application would violate any constitutional principles.
Presmy v. Smith, 69 So.3d 383, 386 (Fla. 1st DCA 2011) (citing Old Port Cove Holdings, Inc. v. Old Port Cove Condo. Ass’n One, 986 So.2d 1279, 1284 (Fla.2008)). “The statute must pass both parts of this test to be applied retroactively.” Fitchner v. Lifesouth Cmty. Blood Ctrs., Inc., 88 So.3d 269, 279 (Fla. 1st DCA 2012).[2] See also Fla. Ins. Guar. Ass’n, Inc. v. Devon Neighborhood Ass’n, Inc., 67 So.3d 187, 194, 196 (Fla.2011) (“Our precedent makes abundantly clear that in determining the question of retroactivity of a legislative enactment, the court must apply the two-prong test — beginning with a search for clear evidence of legislative intent for ret-roactivity. ...”).
*536 Devon Neighborhood also provides guidance on the question of whether clear legislative intent exists for retroactive application of a new statute. In its search for legislative intent, the Court referenced the language of the new statute, the effective date of the new statute, and the effective dates of related statutory amendments within other sections contained in the same chapter. Id. at 196. The Court noted that “the Legislature’s inclusion of an effective date for an amendment is considered to be evidence rebutting intent for retroactive application of a law,” but provided that “‘clearly expressed’ legislative intent for retroactive application,” may supersede the presumption against retroactive application raised by inclusion of an effective date. Id. (citations omitted). Finally, the Court observed that courts may apply statutory construction of the “language, structure, purpose, and legislative history of the enactment” to determine if a statute is intended to be retroactive. Id. at 196-97 (citations omitted).
We note that the law enacting section 768.0755 contains no express statement as to the Legislature’s intent on retroactive application. See Ch. 2010-8, §§ 1-3 Laws of Fla. Section 1 of chapter 2010-8 provides the language of the new statute; section 2 provides that section 768.0710 is repealed; and section 3 provides that the new statute shall take effect July 1, 2010. Id. The summary appearing before the enacting clause mirrors the language of the three sections, but makes no mention of legislative intent for or against retroactive application. Id. There are no other statutory amendments in chapter 2010-8. Id. At the very least, the circumstances here do not establish “clear evidence' of legislative intent for retroactivity,” which is required under the first prong of the retroactivity test. See Devon Neighborhood, 67 So.3d at 196.
Accordingly, we REVERSE the entry of summary judgment and REMAND for further proceedings in accordance with this opinion.
WOLF and MARSTILLER, JJ., concur.

. The second count of the complaint asserted a contract claim against Club Country's insurer; only the tort claim against Club Country is before us on this appeal.

. In Kenz v. Miami-Dade County, 116 So.3d 461 (Fla. 3d DCA 2013), the Third District reviewed whether the trial court erred by granting summary judgment for the defendant county based on the court’s retroactive application of section 768.0755, instead of the older section 768.0710. Kenz, 116 So.3d at 462. The Kenz court did not apply the first prong of the two-part test for retroactivity, but confined its analysis solely to "whether the statute sought to be applied retroactively is substantive in nature, or procedural/remedial in nature." Kenz held that substantive changes require clear legislative intent for retroactive application, but "a procedural/remedial statute ‘should be applied to pending cases in order to fully effectuate the legislation's intended purpose.’ ” Id. at 463-64 (quoting Smiley v. State, 966 So.2d 330, 334 (Fla.2007)).