THOMAS, J.
This is an appeal of the trial court’s entry of final summary judgment in favor of Appellee Winn-Dixie in a “slip-and-fall” negligence action. For the reasons explained below, we affirm.

Facts

Appellant’s complaint alleged, in pertinent part, that Winn-Dixie negligently maintained the floor of its premises by permitting a dangerous condition (a wet floor) to exist, and that this dangerous condition “existed for a sufficient length of *910 time” so that Winn-Dixie knew or should have known about it and corrected it. Appellant alleged that Winn-Dixie’s failure to do so resulted in her slipping and falling, causing injury and attendant damages. Winn-Dixie denied any negligence.
Viewing the evidence in the light most favorable to Appellant, she accompanied a disabled companion for whom she was providing care to the Winn-Dixie store to assist him with his shopping. When they arrived at the store it was “[bjright and sunny,” and there had been no rain that morning. Appellant went into the store to retrieve an electric cart for her companion, and the two entered the store, spending approximately 30 minutes shopping.
When Appellant and her companion left the store and returned to their vehicle, the weather, as Appellant described it, was “steamy,” although it did not appear as if it had sprinkled or rained. They were outside the store for five or ten minutes before Appellant went to return the electric cart. She explained that she “got as far as the handicapped poles, and it started misting.” Appellant testified that it was a very light, “misting” rain. Appellant testified that less than one minute elapsed between the time she started riding the cart back to the store and her arrival inside the front entrance area. Appellant parked the cart, got off, and started walking toward the door but slipped and fell when she was less than a foot away from the cart. Appellant testified that she saw no water or other liquid substance before she fell. She could not say whether she saw any such substance on the floor after she fell, although she claimed she saw “wet tracks” from the wheels of the cart. When asked if she saw any water tracks, Appellant responded: “I just know that my shoes got damp from the floorboard of the electric cart” while bringing the cart back to the store. Appellant described the condition that allegedly caused her fall as “just drops of water” that were “unnoticeable”; thus, she did not see the substance before her fall. Furthermore, she was not sure how long the water was there.
The store manager, Mr. Williams, observed a video taken by a store surveillance camera that showed two of his assistants inspecting the area where Appellant fell two to three minutes before the incident happened. When asked if it rained on the day in question, Williams responded that he believed it did, but “I don’t know if it just stopped or just started.” The video did not show the area outside the store, but did show the incident. When asked why he believed it rained, Williams responded: “Because in the video, it shows that we had an umbrella rack up,” which are “plastic bags where your umbrella gets into, and that’s to keep them from dripping.” These are put out “[bjefore a rain or during a rain.”
Pursuant to Winn-Dixie’s rainy-day policy, Williams explained, “Right before a rain or after, we put a mat down on the entrance door, two cones, and the umbrella rack.” He confirmed that he did not see the mats in place in the video footage from the time of the incident. When asked why the mats were not down, Williams answered, “I’d be just guessing. I don’t know if it had stopped raining, if it hadn’t rained yet and they were in the process of doing it.” As for if he knew why the umbrella rack was there, Williams replied, “I would be just guessing, but I would assume it had just rained or was about to rain.” Williams testified that there were no safety cones in place according to the video. He could not recall if any previous falls had occurred in the area Appellant fell, and he did not know what caused Appellant to fall.
*911 Based on this evidence, Winn-Dixie filed a motion for final summary judgment, arguing that the recently-enacted section 768.0755, Florida Statutes, requires “proof of actual or constructive knowledge of the presence of a transitory foreign substance,” which can be proven by “showing that the dangerous condition existed for such a length of time that in the exercise of ordinary care, the business establishment should have known of the condition ...Applying this statute to the evidence, Winn-Dixie argued that, viewing all facts in Appellant’s favor, there was no evidence that Winn-Dixie had actual or constructive knowledge of water on the floor before Appellant’s fall and that, although Appellant “presented conflicting testimony concerning the potential sources of the ‘unnoticeable’ drops of water on the floor where she fell, [this] testimony is based on speculation and assumptions.”
At the summary judgment hearing, Appellant conceded that she was proceeding under a constructive, not actual, knowledge theory of negligence, and relied on her view of Williams’ testimony that Winn-Dixie had initiated, but did not finish, its rainy-day procedure. Appellant argued that Winn-Dixie should have either installed the warning cones or rainy-weather mats in the affected area.
In granting Winn-Dixie’s motion and entering final summary judgment, the court found:
In 2010, the Florida legislature enacted Section 768.0755, Florida Statutes, the clear intent of which is to re-position the burden of proof in constructive knowledge negligence actions fully onto a plaintiff. Although this action arose before the enactment of Section 768.0755, it has now been held that the statute has retroactive application. Kenz v. Miami-Dade County, [116 So.3d 461] (Fla. 3rd DCA 2013). Clearly, therefore, the burden to demonstrate constructive knowledge of the alleged dangerous condition herein lies with the plaintiff.[1]
In the case at bar, there is competent, substantial, detailed testimony confirming that it began to rain or mist less than one minute before the plaintiffs fall. The plaintiffs only evidence to the contrary is the speculative, vague testimony of the store director that it might have been raining before the plaintiffs fall, but it was equally possible that it had not yet rained. There is no other evidence in the record to support a contention that WD had constructive knowledge of the “un-noticeable” drops of water on the floor.
The court found that the store manager’s testimony was insufficient to meet Appellant’s burden under section 768.0755, and that it “believe[d] that if that statute is to have any meaning, and if the clear legislative intent is to be given any effect, the record facts in this case must defeat the plaintiffs claim.” The court denied Appellant’s motion for rehearing, and this appeal followed.

Analysis

Final summary judgments are reviewed de novo. See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Summary judgment is proper “if the pleadings and summary judgment evidence on file show that there is no genuine issue as to any material fact and *912 that the moving party is entitled to a judgment as a matter of law.” Fla. R. Civ. P. 1.510(c). On reviewing a summary judgment order, an appellate court must “view the facts in a light most favorable to the nonmoving party .... ” Maronda Homes, Inc. of Fla. v. Lakeview Reserve Homeowners Ass’n, Inc., 127 So.3d 1258, 1268 (Fla.2013).
Section 768.0755, Florida Statutes (2010), provides:
(1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
(a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
(b) The condition occurred with regularity and was therefore foreseeable.
(2) This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.
(Emphasis added.) Here, Appellant proceeded under a constructive notice theory of negligence. Viewing the evidence in the light most favorable to Appellant, she failed to overcome her statutory burden of establishing such notice.
Appellant’s theory of liability was based on constructive knowledge of what she herself described as unnoticeable drops of water on the floor where she slipped and fell. Appellant argues that Winn-Dixie had constructive knowledge of this “unnoticeable” dangerous condition “based on the fact that the condition occurred with such frequency” that it should have known of its existence. Below, Appellant argued that “the presence of the umbrella racks [was] constructive knowledge of the dangerous condition.” Neither the record nor the law supports this contention.
According to Mr. Williams’ unrebutted testimony, it was Winn-Dixie’s standard policy to implement its “rainy-day” plan of putting out the umbrella bag rack, orange cones, and floor mats when it either looked as though it was about to rain, or was already raining. Because the umbrella bag rack was visible in the surveillance video, he assumed it was either raining or about to rain at the time Appellant fell. He also testified that the video showed two of his employees inspecting the area where Appellant fell just three minutes before it happened. Thus, when considering the uncontradicted aspects of Williams’ testimony as well as Appellant’s testimony, the presence of the umbrella bag rack indicated that the store was aware that it looked as though it was about to rain, or perhaps had just started raining. According to Appellant, however, it had only started raining (or “misting”) about one minute before she fell. Therefore, at most, the unnoticeable drops of water were on the floor area in question less than four minutes before the fall.
This brief time period was insufficient to satisfy the statute’s requirement that the alleged dangerous condition must exist “for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition” before constructive knowledge of the condition can be imputed. Support for this conclusion is found in Gaidymowicz v. Winn-Dixie Stores, Inc., 371 So.2d 212, 214 (Fla. 3d DCA 1979), in which the evidence showed that the store manager had been down the aisle only five minutes before the customer’s fall, finding nothing. The court held that this was not a suffi *913 cient time to correct the dangerous condition.
Appellant’s position is apparently that Winn-Dixie did not act fast enough to complete its rainy-day precautions before she fell. This ignores the statute’s provision that, unless a “condition occur[s] with regularity and was therefore foreseeable,” the duty to act is activated by actual or constructive notice of the presence of a transitory foreign substance, not simply the possibility that it might become present. Here, not only did Appellant fail to present any evidence that wet conditions occurred with regularity in the area where she fell, she also failed to present any evidence that the alleged wet condition lasted for more than one to four minutes. Also, although “[e]vidence that no inspection had been made during a particular period of time prior to an accident may warrant an inference that the dangerous condition existed long enough so that the exercise of reasonable care would have resulted in discovery,”[2] here, there was an inspection of the subject area about three minutes before the incident, and Appellant testified that the “misting” started only one minute before the incident.
The facts here also differ from those in Feris v. Club Country of Fort Walton Beach, Inc., 138 So.3d 531 (Fla. 1st DCA 2014), where this court held that the trial court erred by entering summary judgment in a slip-and-fall case. In Feris, this court determined that summary judgment was improper because there was circumstantial evidence of “active” negligence by employees of the premises (i.e., not enforcing the rule against allowing drinks on the dance floor), a recurrence of spills on the dance floor, and the existence of liquid on the floor for a sufficient amount of time so as to put the premises owner on notice. 138 So.3d at 535.
Here, however, there was no evidence of recurring water in the area in question or of prior incidents in that area. At most, the alleged “unnoticeable” water was present for no more than four minutes. Nor was there any evidence of active negligence by Winn-Dixie employees.

Conclusion

Based on the foregoing, and viewing the evidence in the light most favorable to Appellant, we hold that Appellant failed to overcome the statutory burden of proving that Winn-Dixie had constructive knowledge of any alleged “transitory foreign substance” requiring remedial action, and affirm the trial court’s entry of final summary judgment.
AFFIRMED.
RAY and OSTERHAUS, JJ., concur.

. This court, in dicta, reached a different conclusion concerning the retroactive effect of section 768.0755 in Feris v. Club Country of Fort Walton Beach, Inc., 138 So.3d 531 (Fla. 1st DCA 2014). Appellant states that the statute is the "current standard for premises liability actions .... ” Thus, any argument that the trial court applied the incorrect statute is waived, and we need not decide the issue here.

. Schmidt v. Bowl America Florida, Inc., 358 So.2d 1385, 1387 (Fla. 4th DCA 1978).