DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BARBARA LOREN,**
Appellant,

v.

**ONCE UPON A TIME GROUP, CORP.,**
Appellee.

No. 4D2023-3154

[July 9, 2025]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Gregory M. Keyser, Judge; L.T. Case No. 502019CA011719.

Sam Mandelbaum and Annabel C. Majewski of Wasson & Associates, Chartered, Miami, and Frank L. Labrador of DLD Lawyers, Coral Gables, for appellant.

Lissette Gonzalez of Cole, Scott & Kissane, P.A., Miami, for appellee.

GROSS, J.

In a premises liability case arising from plaintiff Barbara Loren's fall in a restaurant, the jury returned a verdict assigning no negligence to the plaintiff and awarding her $12,186 in past medical expenses and $425,000 in past and future pain and suffering, for a total damage award of $437,186. The defendant, Once Upon a Time Group, the owner of the restaurant where the plaintiff fell, moved to set aside the verdict in accordance with its motion for directed verdict, or in the alternative, moved for a new trial. In its order on the posttrial motions, the circuit court granted the motion to set aside the verdict and, in the event we reversed the ruling to set aside the verdict, also granted the motion for new trial due to three "improper and prejudicial statements and arguments" by the plaintiff's attorney in closing argument. The circuit court later entered final judgment in favor of the restaurant.

Finding that the plaintiff introduced sufficient evidence to submit her case to the jury, we reverse that portion of the posttrial order granting the restaurant's motion for judgment in accordance with its motion for

directed verdict. We affirm that portion of the posttrial order granting a new trial because the trial court did not abuse its broad discretion in making that ruling. We therefore reverse the final judgment and remand for a new trial.

### *The Order Granting a Directed Verdict*

"A motion for directed verdict should be granted only where there is no reasonable evidence upon which a jury could legally predicate a verdict in favor of the non-moving party." *Benitez v. Joseph Trucking, Inc.*, 68 So. 3d 428, 430 (Fla. 5th DCA 2011). But where the plaintiff has "failed to prove the essential elements of their claim," a directed verdict should be entered in the defendant's favor. *Anesthesiology Critical Care & Pain Mgmt. Consultants, P.A. v. Kretzer*, 802 So. 2d 346, 351 (Fla. 4th DCA 2001).

To prevail on a negligence claim, a plaintiff ordinarily has to prove four elements: (1) duty; (2) breach; (3) causation; and (4) damages. *R.J. Reynolds Tobacco Co. v. Brown*, 70 So. 3d 707, 717 (Fla. 4th DCA 2011). "[A] directed verdict is not appropriate in cases where there is conflicting evidence as to the causation or the likelihood of causation." *21st Century Centennial Ins. Co. v. Thynge,* 234 So. 3d 824, 826 (Fla. 5th DCA 2017) (internal quotation marks omitted).

In a slip-and-fall case involving a transitory substance in a business, "the breach element of the plaintiff's claim is statutorily constrained by section 768.0755, Florida Statutes." *Dolgen Corp, LLC v. Doty*, 383 So. 3d 864, 866–67 (Fla. 5th DCA 2024) (internal quotation marks omitted).

Section 768.0755, Florida Statutes (2018), governs liability for slip-and-falls caused by transitory foreign substances in a business establishment, and requires proof of actual or constructive knowledge of the dangerous condition:

> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:

> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or

2

      (b) The condition occurred with regularity and was therefore foreseeable.

§ 768.0755(1)(a)–(b), Fla. Stat. (2018).

    Enacted in 2010 to replace section 768.0710, section 768.0755 differs from its predecessor in two ways: (1) by requiring proof of actual or constructive knowledge of the dangerous condition as an element of the claim; and (2) by removing language regarding the owner's negligent maintenance, inspection, repair, warning, or mode of operation. *Pembroke Lakes Mall Ltd. v. McGruder*, 137 So. 3d 418, 424–26 (Fla. 4th DCA 2014). In short, absent actual or constructive knowledge of the dangerous condition, section 768.0755 does not allow for liability "based solely on the business establishment's general failure to maintain the premises." *N. Lauderdale Supermarket, Inc. v. Puentes*, 332 So. 3d 526, 530 (Fla. 4th DCA 2021).

    "Actual knowledge" of a dangerous condition exists when the business or one of its agents "knows of or creates the dangerous condition." *Dolgen Corp.*, 383 So. 3d at 867. "Constructive notice may be inferred from either: (1) the amount of time a substance has been on the floor; or (2) the fact that the condition occurred with such frequency that the owner should have known of its existence." *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011).

    Absent proof of actual knowledge, a plaintiff must offer evidence that demonstrates a defendant's constructive notice of the dangerous condition. "In trying to assess how long a substance has been sitting on a floor, courts look to several factors, including evidence of footprints, prior track marks, changes in consistency, or drying of the liquid." *Welch v. CHLN, Inc.*, 357 So. 3d 1277, 1278–79 (Fla. 5th DCA 2023) (cleaned up). Courts also consider whether the "offending liquid" was "dirty" or "scuffed." *Id.* at 1279.

    When the evidence permits the inference that the substance had been present for a significant amount of time or that the condition occurred with regularity, a fact question exists concerning a defendant's constructive knowledge. *See Carpio v. W. Beef of Fla., LLC*, 384 So. 3d 192, 192–93 (Fla. 4th DCA 2024) (reversing summary judgment where the plaintiff saw "dark, dirty water," along with shopping-cart tracks and footprints, near the seafood department where employees were always stationed); *Welch*, 357 So. 3d at 1277–78 (holding that the evidence was sufficient to create a question of fact as to the defendant's constructive knowledge where the plaintiff testified that she fell in "quite a bit" of "dirty," "murky," and "slimy"

3

water that had footprints "going in different directions"); *Norman v. DCI Biologicals Dunedin, LLC*, 301 So. 3d 425, 427 (Fla. 2d DCA 2020) (finding that plaintiff's testimony was sufficient to preclude summary judgment where the plaintiff testified that he slipped on "like a cup of water" on the floor next to the bathroom sink and saw "a couple of footprints, like dirty footprints"); *Feris v. Club Country of Fort Walton Beach, Inc.*, 138 So. 3d 531, 535 (Fla. 1st DCA 2014) (finding that circumstantial evidence allowed the inference that the dangerous condition existed with such regularity that Club Country knew or reasonably should have known of its existence where the deposition testimony reflected that "it was normal for patrons to take and spill drinks on the dance floor in the room where the fall occurred"); *Doudeau v. Target Corp.*, 572 F. App'x 970, 972 (11th Cir. 2014) (reversing summary judgment where the facts, including evidence it had been raining before the plaintiff's fall and a Target employee's testimony "that the area ten to fifteen feet away, where the carpet met the tile, was a known slip and fall area when it rained," supported "a reasonable inference that Target had constructive knowledge that rainwater could create a slippery floor in the area where Doudeau fell and that the water could have been on the floor long enough for Target to discover it").

"An appellate court reviewing the grant of a directed verdict must view the evidence and all inferences of fact in the light most favorable to the nonmoving party, and can affirm a directed verdict only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party." *Owens v. Publix Supermarkets, Inc.*, 802 So. 2d 315, 329 (Fla. 2001).

Applying this view of the evidence, we conclude that the plaintiff presented sufficient evidence to survive a defense motion for directed verdict.

Constructive knowledge may be proven by showing that the condition either (1) existed for such a length of time that the restaurant should have discovered it in the exercise of ordinary care or (2) occurred with regularity and was therefore foreseeable. The plaintiff arguably presented evidence of both.

As to length of time, the plaintiff's own testimony constituted direct evidence that water was on the floor in the area where she fell. She testified that she took a couple of steps into the restaurant from the patio, slid "like going to first base," felt "greasy, dirty" water on her hand, and

4

noticed a black stain on her white pants.[1]  She described the tile floor as "wet, greasy, and dirty."  And when the paramedics arrived, they were slipping as they tried to raise the plaintiff.  Notably, it was not raining at the time.  Water is ordinarily clear, so the fact that the water had become dirty and greasy allows for the inference that it had been present long enough for patrons to track through it.

This inference is strengthened by the bar manager's testimony that, for ten to fifteen minutes before the accident, many people had passed through the same area—the only route to the restroom from the patio.

As to the occurrence of the wet condition with regularity, the plaintiff's evidence allowed the jury to conclude that condensation was a recurring problem inside the restaurant, especially near doorways leading to the outside, such as the front doors and the patio doors near where the plaintiff fell.  The plaintiff's expert's testimony about the results of his summertime inspection, coupled with statements from the bar manager and the restaurant owner, reasonably allow for this conclusion.

The plaintiff's fall occurred about one or two feet away from an air conditioning diffuser, which the jury could have reasonably inferred was the source of the water causing the plaintiff's fall.  Less than two months after the plaintiff's June accident, the plaintiff's expert conducted an unannounced, unscheduled August inspection and found "literally droplets on every diffuser," tracked condensate "throughout the restaurant," and an "extremely smooth" tile surface.  The expert saw "quite a large area where it was damp from people moving in and out of the booths" next to where the plaintiff fell along the aisleway to the bathroom.  Both the inspection and the plaintiff's fall occurred during the hot, humid summer months.

The expert explained how the open glass doors to the patio area, coupled with large exhaust fans, "create[d] a negative pressure that draws the moist air in through the glass more rapidly," which occurs especially during the summertime in South Florida when "it's extremely hot and the

---

[1] Arguing that this testimony was insufficient because it was "self-serving," the restaurant relies upon distinguishable case law involving conclusory, self-serving testimony offered without any supporting facts or explanation.  *See, e.g., Craven v. TRG-Boynton Beach, Ltd.*, 925 So. 2d 476, 480 (Fla. 2006).  All evidence a party presents is "self-serving," so the fact that the plaintiff's testimony may have been "self-serving" does not make it legally insufficient.  The plaintiff here testified to specific, concrete facts that she observed, not bare assertions, conclusory statements, or statements of fact derived from inadmissible hearsay.

moisture is in the air," making "the water droplets become larger and become more extensive." The presence of condensation on the floor during the expert's inspection reasonably supports the inference that the condition existed on a regular basis, because its discovery by chance during an unannounced summertime visit suggests that it was not an isolated occurrence.

The bar manager's testimony further supports the notion that condensation was known to be a recurring problem in the restaurant near doors leading outside. Although the bar manager testified that the floor was "completely dry" where the plaintiff fell, he admitted that the air conditioning diffuser close to where the plaintiff fell had dripped "maybe twice" in the year that he had worked at the restaurant. He also mentioned that he had seen leaking air conditioning vents near the front entrance of the restaurant and that the hostess would typically keep a towel at the hostess station to wipe the water off the floor. He further conceded that "when the weather is too humid and we open the restaurant and the restaurant is quite cold inside, we have some condensation on the floor."

Significantly, the bar manager acknowledged that a mat was "usually" kept near the area where the plaintiff fell because the "mat company" thought it was a "safe place to put it," which points to the restaurant's awareness of the potential for slipperiness at that location. The mat was absent at the time of the accident.

Although the restaurant owner attempted to deny that mats were placed on the floor to prevent slipping, he nonetheless admitted that the mat near the hostess station at the front of the restaurant was there "for safe[ty]" to prevent a potential problem with condensation on the floor caused by opening and closing the doors near the A/C vents, which allowed humidity to enter the restaurant. Although this testimony concerned a different area of the restaurant from where the plaintiff fell, the laws of physics operate the same regardless of which entrance the plaintiff used. Therefore, the jury could reasonably infer that if a mat had been placed at the front of the restaurant "for safe[ty]" to prevent a potential problem with condensation on the floor, then this would have been the same reason a mat was usually placed inside the restaurant at the entrance from the patio.

Viewed in the light most favorable to the plaintiff, the expert's findings and the defendant's reluctant admissions established that condensate was not a one-off event but a recurring, foreseeable condition. The plaintiff presented sufficient evidence of the restaurant's constructive notice of the dangerous condition to withstand a directed verdict.

### *Order Granting a New Trial*

The circuit court granted a new trial based on three comments by the plaintiff's attorney in closing argument. The court found that the comments, "taken collectively and in totality," deprived the restaurant of a fair trial. Each of the comments prompted the restaurant to object and move for a mistrial.

In the first offending comment, the plaintiff's attorney read to the jury an excerpt from the bar manager's deposition that had not been introduced into evidence because the parties had agreed to exclude it. In the second comment, the plaintiff's attorney told the jury that a doctor had testified that the cost of knee replacement surgery for the plaintiff would be over $100,000, despite the plaintiff's earlier withdrawal of her claim for future medical expenses and the lack of any trial evidence as to the cost of knee replacement surgery. In the third comment, the plaintiff's counsel suggested that the restaurant might have withheld or destroyed video surveillance evidence.

"An order granting a motion for new trial is reviewed under an abuse of discretion standard." *The Hertz Corp. v. Gleason*, 874 So. 2d 1217, 1219 (Fla. 4th DCA 2004). In fact, a trial court's discretion to grant a new trial is "of such firmness that it would not be disturbed except on clear showing of abuse." *Cloud v. Fallis*, 110 So. 2d 669, 672 (Fla. 1959).

"[A] stronger showing is required to reverse an order allowing a new trial than to reverse an order denying a motion for new trial." *Cenvill Cmtys., Inc. v. Patti*, 458 So. 2d 778, 781 (Fla. 4th DCA 1984). "When reviewing the order granting a new trial, an appellate court must recognize the broad discretionary authority of the trial judge and apply the reasonableness test to determine whether the trial judge committed an abuse of discretion." *Brown v. Est. of Stuckey*, 749 So. 2d 490, 497–98 (Fla. 1999). "If an appellate court determines that reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion." *Id.* at 498.

Given this deferential standard of review, we cannot say that the trial court abused its discretion in granting a new trial.

*Reversed in part, affirmed in part and remanded for a new trial.*

WARNER and CONNER, JJ., concur.

7

\*           \*           \*

*Not final until disposition of timely filed motion for rehearing.*